Susan M. BORGO, Appellee,

v.

Daniel S. GOLDIN, Administrator,
National Aeronautics and Space
Administration, Appellant.

No. 98–5503.

United States Court of Appeals,
District of Columbia Circuit.

Argued Sept. 13, 1999.

Decided March 3, 2000.

Wyneva Johnson, Assistant U.S. Attorney, argued the cause for appellant. With her on the briefs were Wilma A. Lewis, U.S. Attorney, and R. Craig Lawrence, Assistant U.S. Attorney.

Douglas B. Huron argued the cause for appellee. With him on the brief was Richard A. Salzman.

Before: EDWARDS, Chief Judge, WILLIAMS, and GARLAND, Circuit Judges.

Opinion for the Court filed by Circuit Judge GARLAND.

GARLAND, Circuit Judge:

Alleging violations of Title VII of the Civil Rights Act of 1964, Susan Borgo sued her former employer, the National Aeronautics and Space Administration (NASA), for firing her from her position at the agency. The case was prosecuted on the theory that NASA had mixed motives for Borgo's termination. Concluding that NASA was at least partially motivated by a desire to retaliate against Borgo for protected activity, the district court granted summary judgment for plaintiff. Further concluding that Borgo would not have been fired in the absence of the retaliatory motive, the court granted her motion for judgment as a matter of law on her request for a damages remedy. Because we conclude that NASA's motivation is a disputed issue of fact that a reasonable jury could decide either of two ways, we reverse and remand for a trial on the merits.

## I

On October 18, 1992, NASA hired Borgo as a probationary employee to work in its Office of Small and Disadvantaged Business Utilization. When hired, she was expected to serve primarily as Executive Secretary of the NASA Minority Business Resources Advisory Committee (NMBRAC). But Borgo's relationships with her superiors soon deteriorated. On February 8, 1993, she was removed as Executive Secretary of NMBRAC because of tension between her and NMBRAC's chairman. Tension also developed between Borgo and her supervisor, Ralph Thomas. Thomas criticized plaintiff for shortcomings "that included missed deadlines, unexplained absences, and a generally inappropriate attitude in dealings with superiors." *Borgo v. Goldin*, No. 95cv0155, slip op. at 2 (D.D.C. Aug. 21, 1996).[1]

On April 29, 1993, Thomas sent Borgo a memorandum complaining that she had in-

volved his office in a government–wide conference without informing him. Thomas wrote that he was "very displeased that you did not tell me about this meeting until you had already sent out letters announcing it." "In the future," he instructed, "please inform me of any and all affairs like this" at their inception. "It would have been very embarrassing to me to have heard about a government–wide meeting sanctioned by my office which I knew nothing about." J.A. at 127.

On the following Monday, May 3, 1993, Borgo sent Thomas a response. Her letter consisted of five paragraphs on two pages. *See* J.A. at 31–32. The first paragraph characterized Thomas' April 29 memorandum as ordering that "all professional actions on my part must be cleared by you before I may proceed." The second noted that she had received her prior employer's "highest award for performance," and that she had "made it perfectly clear in [her] employment interview" with NASA that she "would not accept a job in a typical bureaucratic operation." She was unable, she said, "to be idle and waste taxpayers' dollars while wait[ing] for specific work assignments." The third paragraph complained that she had "not been assigned any action items" during the past two weeks, "ha[d] not been included as a participate [sic] in any outreach efforts," and had taken action on the conference because she "had little else to do." The letter's penultimate paragraph, central to this litigation, stated in relevant part as follows:

It is my opinion, that if I, a white female, was your manager, and I did not include you, an African-American male, as a full member of the team, and treat you as a competent professional, that, by now, I would have been severely reprimanded or fired by senior management.

*Id.* at 32.

On May 25, 1993, Thomas sent Borgo a termination letter, stating that she was

---

1. Although plaintiff disputed those criticisms, for purposes of her motion for judgment as a matter of law she "accept[ed] as true every

pre-May 3rd criticism made by Mr. Thomas." 2/3/98 Trial Tr. at 46 (J.A. at 312).

being discharged as a result of "unacceptable conduct and performance during your probationary period." J.A. at 128. He wrote that there were "serious deficiencies in your attitude, behavior and conduct which adversely impact the performance of your assigned duties and responsibilities." Thomas noted Borgo's "inability to effectively interact and work with the Chairman" of NMBRAC, her "inability to conform to established deadlines on work assignments," and her "general negative behavior and attitude in the office." He listed specific examples of "dates/deadlines which you have missed that have adversely impacted the office," as well as multiple instances of unexplained absences from work. He further cited examples of behavior "bordering on insubordination," including continuing to work on NMBRAC matters after having been expressly directed not to do so, as well as initiating without authorization the government-wide conference discussed above. With respect to the latter, Thomas wrote: "Despite my counseling to you on this matter, your letter to me on May 3, 1993 still did not indicate that you understood the necessity that I be kept fully informed and would cooperate and give me notice of any future meetings." *Id.* at 128–29.

Plaintiff challenged her termination on two fronts. First, before the Merit Systems Protection Board (MSPB) she charged that NASA had retaliated against her for whistleblowing.[2] At the MSPB hearing on those charges, Thomas testified regarding his reaction to Borgo's May 3, 1993 letter and his reasons for firing her. *See* J.A. at 119–20. He described the letter as a "purported answer" to his April 29 memorandum. It was "[p]urported," he said, because "it doesn't answer it." Referring to the government-wide conference, he stated: "I told her, first of all,

this was a good idea, but she should tell me about things as important as this. And she writes me back pretty much telling me where to go." Counsel then asked for clarification, and Thomas explained that he interpreted the letter as a declaration that plaintiff was going to do as she pleased. It was, he said, "full of things that were inaccurate and were not addressing my memo at all." *Id.*

In an exchange that would later prove pivotal in the Title VII litigation, counsel read the penultimate paragraph of the May 3 letter aloud and then asked:

Q: Did you form any opinion about that statement?

THOMAS: Well, yes. In this whole—during her whole tenure, I had never mentioned her race at all, and, if anything it was the other way around. *This letter*, and the reason I think you saw a lot of emotion coming out—and I apologize to you Mr. Gorman—but that was how I felt while reading the letter. *It was the straw that broke the camel's back.* I mean, after all of this, after all—after not producing any substantive thing in the office and just giving everyone an overall hard time and making excuses for everything she did that she was supposed to do, but didn't do, just the whole—and then this, you know, and all I did was tell her—let me know about activities as important as this, she writes me a letter like this. That—in my mind, that was it.

Q: When you say that was it, how did you regard this language? Did you regard it as misconduct in any way?

THOMAS: Yes, misconduct, insubordinate.

J.A. at 122–23 (emphasis added). The MSPB did not decide Borgo's case until February 3, 1998. On that date it rejected

---

**2.** The MSPB adjudicates charges brought under 5 U.S.C. § 2302 alleging, inter alia, that a federal agency has taken a personnel action against an employee for disclosing a violation of law. The substance of Borgo's charge was that NASA fired her because she reported acts of misconduct relating to the Federal Advisory Committee Act, 5 U.S.C. app. II, §§ 1 *et seq.*

her allegations, ruling that NASA had not retaliated against her for whistleblowing, but rather had discharged her for the reasons stated in Thomas' May 25, 1993 termination letter.

In the meantime, Borgo had filed suit in United States District Court. There, she alleged that NASA had discriminated against her because of her race and sex, and then had retaliated for her complaint of discrimination by discharging her, all in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e–5, 2000e–16. Plaintiff moved for partial summary judgment on the retaliation claim. Applying Title VII's framework for analyzing allegations of mixed motives on the part of an employer, *see* 42 U.S.C. § 2000e–2(m), the district court granted Borgo's motion. Relying on Thomas' MSPB testimony, the court held that no reasonable juror could conclude other than that "retaliation was at least part of the defendant's motivation for firing her." *Borgo*, slip op. at 13.

Thereafter, the case proceeded to trial on the question of remedy, applying Title VII's rules for determining appropriate remedies in mixed-motive cases.[3] NASA contended that even if retaliation had been one motive for terminating Borgo, under Title VII the court could not "award damages or issue an order requiring ... reinstatement" because the agency "would have taken the same action in the absence of[that] impermissible motivating factor." 42 U.S.C. § 2000e–5(g)(2)(B). At the end of the testimony of Ralph Thomas, NASA's first witness, the district court took the case from the jury and entered judgment for plaintiff as a matter of law. "No reasonable juror could conclude," it held, "that NASA would have decided to fire [plaintiff], even absent retaliation." 2/3/98 Trial Tr. at 47 (J.A. at 313).

## II

We review de novo both the district court's decision to grant summary judgment pursuant to Federal Rule of Civil Procedure 56, and its decision to grant judgment as a matter of law pursuant to Rule 50(a). *See Hall v. Giant Food, Inc.,* 175 F.3d 1074, 1076 (D.C.Cir.1999) (summary judgment); *Holbrook v. Reno*, 196 F.3d 255, 259 (D.C.Cir.1999) (judgment as a matter of law). Summary judgment may be granted only if "there is no genuine issue as to any material fact [and] the moving party is entitled to judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (quoting Rule 56). A dispute about a material fact "is 'genuine' ... if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248, 106 S.Ct. 2505. As the Supreme Court noted in *Anderson,* "this standard mirrors the standard for a directed verdict under Federal Rule of Civil Procedure 50(a), which is that .... [i]f reasonable minds could differ as to the import of the evidence ... a verdict should not be directed." *Id.* at 250–51, 106 S.Ct. 2505 (citations omitted). The "primary difference between the two motions is procedural," the Court explained; "summary judgment motions are usually made before trial and decided on documentary evidence, while directed verdict motions are made at trial and decided on the evidence that has been admitted." *Id.* at 251, 106 S.Ct. 2505 (citation omitted). In both situations, the court must view the evidence in the light most favorable to the nonmoving party and must not assess witness credibility. *See Aka v. Washington Hosp. Ctr.,* 156 F.3d 1284, 1288, 1298 (D.C.Cir.1998) (summary judgment); *Mackey v. United States,* 8 F.3d 826, 829 (D.C.Cir.1993) (judgment as a matter of law).

**3.** The trial was limited to plaintiff's cause of action for retaliation. Prior to trial, Borgo abandoned her underlying claims of race and sex discrimination. *See* Joint Pretrial Statement at 1 n.1 (Jan. 8, 1998).

■ Title VII states that "[i]t shall be an unlawful employment practice for an employer to discriminate against any of [its] employees ... because he has opposed any practice made an unlawful employment practice by this subchapter." 42 U.S.C. § 2000e–3(a).[4] The amendments to Title VII contained in the Civil Rights Act of 1991 address the proper disposition of cases in which there may be a mixture of legitimate and illegitimate motives for an employer's actions. *See* Civil Rights Act of 1991, Pub.L. No. 102–166, § 107, 105 Stat. 1071, 1075 (codified at 42 U.S.C. §§ 2000e–2(m), 2000e–5(g)). As codified at 42 U.S.C § 2000e–2(m), the statute provides that liability for "an unlawful employment practice is established when the complaining party demonstrates that race, color, religion, sex or national origin was a motivating factor for any employment practice, even though other factors also motivated the practice." Section 2000e–5(g)(2)(B) then addresses the question of remedy, providing that when the plaintiff proves that an impermissible consideration was a motivating factor, but the defendant demonstrates that it "would have taken the same action in the absence of" that factor, a court may not award certain kinds of relief including damages and reinstatement (but may grant other specified relief, including costs and attorney's fees).[5] The parties and the district court assumed that the 1991 Act's mixed-motives framework applies both where the allegedly impermissible motivation is retaliation, as it is here, and where it is race, color, religion, sex or national origin, as expressly set forth in the statute. Accordingly, we make the same assumption for purposes of this appeal.[6]

---

4. The same section makes it unlawful to discriminate against an employee because the employee "participated" in any proceeding under the subchapter. *See* 42 U.S.C. § 2000e–3(a). As the district court held, it is the "opposition" rather than the "participation" clause that applies to this case. Plaintiff complained of retaliation "not against her official EEO complaints, but against [the May 3] memorandum she wrote to her supervisor opposing discrimination she perceived from him." *Borgo,* slip op. at 5.

5. The three provisions of Title VII cited above apply only to private employers, *see id.* § 2000e(b); a separate provision provides that "[a]ll personnel actions affecting employees ... in executive agencies ... shall be made free from any discrimination based on race, color, religion, sex, or national origin," *id.* § 2000e–16(a). "Despite the differences in language ... we have held that Title VII places the same restrictions on federal and District of Columbia agencies as it does on private employers, and so we may construe the latter provision in terms of the former." *Bundy v. Jackson,* 641 F.2d 934, 942 (D.C.Cir. 1981). We have specifically applied that principle in the context of retaliation claims. *See Brown v. Brody,* 199 F.3d 446, 452–53 (D.C.Cir.1999).

6. In *Price Waterhouse v. Hopkins,* the Supreme Court held that once a plaintiff proves that an impermissible motive was a substantial or motivating factor in an adverse employment decision, the burden shifts to the employer to demonstrate it would have made the same decision in the absence of the unlawful motive. *See* 490 U.S. 228, 249–58, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989) (Brennan, J.) (plurality opinion); *id.* at 259, 109 S.Ct. 1775 (White, J., concurring). It further held that if the employer satisfies that burden, it may avoid a finding of liability altogether. *See id.* at 258, 109 S.Ct. 1775 (Brennan, J.) (plurality opinion); *id.* at 260, 109 S.Ct. 1775 (White, J.); *id.* at 261, 109 S.Ct. 1775 (O'Connor, J., concurring). In *Thomas v. National Football League Players Ass'n,* 131 F.3d 198, 202–04 (D.C.Cir.1997), this court applied *Price Waterhouse* to pre–1991 claims of retaliation under Title VII.

In 1991, Congress overturned *Price Waterhouse* in part, amending Title VII to provide that once a plaintiff proves discrimination to have been a motivating factor, liability is established. *See* Civil Rights Act of 1991, § 107 (codified at 42 U.S.C. § 2000e–2(m)); *see also* H.R.REP. No. 102–40, pt. 1, at 45–49 (1991). Although an employer cannot thereafter avoid liability, it can avoid a damages or reinstatement remedy by demonstrating that it would have taken the same action in the absence of that factor. *See* 42 U.S.C. § 2000e–5(g)(2)(B). As noted in the text above, while discrimination claims based on protected status, such as race or sex, were covered by the 1991 Act, Congress did not expressly include retaliation claims in the provision that modified *Price Waterhouse.* Some circuits have held that retaliation claims are not covered by the Civil Rights Act of 1991 and are still governed by

In the following sections, we examine two questions. First, we consider whether the district court properly granted summary judgment on plaintiff's claim that NASA violated Title VII because retaliation was a motivating factor in her termination. Second, we consider whether the court properly granted judgment as a matter of law against NASA's contention that the scope of the remedy should be limited because the agency would have fired Borgo even in the absence of a retaliatory motive.

## A

In seeking summary judgment on her retaliation claim, Borgo construed Thomas' MSPB testimony as stating that the penultimate paragraph of her May 3 letter, which arguably charged him with "reverse" discrimination, was "the straw that broke the camel's back." Pl.'s Mem. in Supp. of Partial Summ. J. at 8–9 (J.A. at 19–20). NASA defended by arguing that Thomas' testimony was that it was Borgo's "*entire*" letter—not the controverted paragraph—"that was the final straw." Def.'s Opp. to Partial Summ. J. at 11 (J.A. at 48) (emphasis in original).[7] Accepting Borgo's argument, and relying solely on Thomas' MSPB testimony, the district court granted plaintiff's motion for summary judgment. We cannot sustain that decision because, viewed in the light most favorable to NASA, Thomas' MSPB testimony on this question was at best ambiguous. A genuine issue regarding Thomas' motivation therefore remained for determination at trial.

At the MSPB hearing, Thomas testified at length about what he regarded as the unresponsiveness of Borgo's letter. Rather than acknowledging her failure to advise him of the government-wide conference, or promising to do better in the future, she had sent him a letter declaring that she was "unable to be idle and waste the taxpayers' money." J.A. at 120. In essence, he said, "she writes back pretty much telling me where to go. . . . She is going to do what she wants to do." *Id.*

Then came the fateful question and answer. It is true that counsel read the penultimate paragraph of the May 3 letter and then asked: "Did you form any opinion about that statement?" *Id.* at 122. It is also true that counsel asked Thomas how he regarded "this language." *Id.* at 123. But it is not at all clear that those were the questions Thomas answered. Instead, he said:

> *This letter*, and the reason I think you saw a lot of emotion coming out—and I apologize to you Mr. Gorman—but that was how I felt *while reading the letter. It was the straw that broke the camel's back.* I mean, after all of this, after all—after not producing any substantive thing in the office and just giving everyone an overall hard time . . . and then this, you know, and all I did was tell her—let me know about activities as important as this, she writes me a *letter* like this. *That*—in my mind, *that* was it.

*Id.* at 122–23 (emphasis added).

Thomas' testimony does make clear that Borgo's letter was the final straw. But he did not state that the paragraph complaining of reverse discrimination was that straw. Nor was the letter a single, unitary complaint of discrimination. Only one

---

*Price Waterhouse. See, e.g., McNutt v. Board of Trustees,* 141 F.3d 706, 709 (7th Cir.1998); *Woodson v. Scott Paper Co.,* 109 F.3d 913, 932–36 (3d Cir.1997). This circuit has not addressed that question. Because both parties agreed below that the Civil Rights Act of 1991 provided the appropriate framework for decision, *see* Joint Pretrial Statement at 4, and neither asks us to address the issue here, we have no need to resolve the question to decide this case. *See also* Borgo Br. at 13 n.3 (stating that resolution of the issue is not required).

7. NASA also defended on the ground that the controverted paragraph did not constitute protected opposition to an unlawful employment practice under 42 U.S.C. § 2000e–3(a). In light of our reversal of summary judgment, we do not reach that question.

paragraph of the letter can be characterized as such a complaint. The balance, although phrased as a response to Thomas' original memorandum, communicates a message of continuing resistance to Thomas' right to supervise her. From Thomas' testimony, a jury *could* infer that he was retaliating for the paragraph alleging discrimination. But it could also reasonably infer that he was responding to the letter's overall nonresponsiveness and message of nonacquiescence. That was precisely the point Thomas made in the testimony leading up to his reference to the proverbial straw.[8] Accordingly, even focusing solely on Thomas' MSPB testimony as the district court did, we cannot agree that any reasonable jury would have to find him motivated at least in part by a desire to retaliate against plaintiff for including the offending paragraph.

Moreover, Thomas' MSPB testimony was not the only evidence before the court. NASA's filings included an affidavit from Thomas asserting that he fired Borgo for "the reasons specified in my termination letter to her." Thomas Aff. ¶ 63 (J.A. at 72). That May 25, 1993 letter listed the grounds for termination as including missed deadlines, unexplained absences, inability to work with others, behavior "bordering on insubordination," and, with specific reference to Borgo's May 3 letter, the failure to indicate that she would cooperate with Thomas in the future. J.A. at 128–29. It did not, however, mention Borgo's suggestion that he was guilty of reverse discrimination. A jury considering this list of reasons could conclude that retaliation was simply not in the mix. Of

course, a jury could also conclude that Thomas was not being forthright in omitting the discrimination complaint from that list. For purposes of summary judgment, however, the statement in Thomas' affidavit—that he fired Borgo for the reasons set out in the termination letter—must be accepted as true. *See Hall v. Giant Food, Inc.*, 175 F.3d 1074, 1078 (D.C.Cir.1999); *Greene v. Dalton*, 164 F.3d 671, 674 (D.C.Cir.1999).

In sum, we cannot reach a conclusion that Thomas had a retaliatory motive without both construing ambiguity against NASA and discounting Thomas' credibility. We may not do either, however, at the summary judgment stage. Because there remains a genuine issue of material fact, and because a reasonable jury could find that NASA did not have, even in part, a retaliatory motive, we reverse the grant of summary judgment.

**B**

In addition to granting Borgo's motion for summary judgment on the issue of liability, the district court also granted Borgo's motion for judgment as a matter of law on the question of remedy, finding that NASA would not have fired Borgo in the absence of a retaliatory motive. Our reversal of the grant of summary judgment necessarily requires reversal of the grant of judgment as a matter of law. The latter, which goes only to the question of an appropriate remedy, cannot be considered until a jury first finds for Borgo on the issue of liability. Moreover, if a rea-

---

**8.** Referring to Borgo's May 3, 1993 letter, Thomas testified:

> This is her purported answer to my April 29th memo.... [Purported] [b]ecause it doesn't answer it. You know, I told her ... she should tell me about things as important as this. And she writes back pretty much telling me where to go.... She is going to do what she wants to do.... [R]ather than addressing what I've said, ... she goes over why she was hired at NASA, you know, which is irrelevant.... And she talks about ... what she did in her last job and how qualified she was. And then she says very curious things like she is unable to be idle and waste the taxpayers' money while she waits for specific work assignments while at the same time she was late with most of the work assignments. She talks about ... how she was not included to participate in outreach efforts and that was totally untrue.... So the memo was full of things that were inaccurate and were not addressing my memo at all.

J.A. at 119–21.

sonable jury could conclude that NASA did not have, even in part, a retaliatory motive, it necessarily could conclude that NASA would have fired Borgo in the absence of such a motive.

This logic aside, at trial there was more than sufficient evidence from which a reasonable jury could conclude that NASA would have fired Borgo in the absence of retaliation. At the trial stage, NASA was not limited to Thomas' MSPB transcript, affidavit, and termination letter. Testifying in person, Thomas conceded that he could not say he would have fired plaintiff absent the May 3 letter. The letter, he said, was "the final thing that swung me." J.A. at 278. But he steadfastly resisted the suggestion that his true motivation was the letter's penultimate paragraph. To the contrary, he repeatedly insisted that Borgo was fired because of the letter's overall refusal to acknowledge his supervisory authority, not because of the statement suggesting he was guilty of reverse discrimination:

> Q: And it was this statement here that you considered to be misconduct?
>
> THOMAS: No, I've never said that. I never referred to that sentence.
>
> Q: You did consider this statement to be misconduct?
>
> THOMAS: No. I've always referred to the letter. I've always referred to the letter, and I've always said that it's because the letter did not say she would do what I said to do.

*Id.* at 271.[9]

Moreover, when specifically confronted with his MSPB testimony, Thomas insisted that, although he had been asked about the statement in the controverted paragraph, his answer about the last straw was directed to the letter as a whole:

> THOMAS: Every time I said "letter," didn't I? When did I say this paragraph?
>
> Q: You were asked specifically about this statement in the letter, and that was your response.
>
> THOMAS: But what was my answer? My answer was "letter." My letter [sic] was never this paragraph.
>
> ....
>
> It was the letter. The letter. Once again she was saying she wasn't going to do what I said to do. How can you supervise someone after that?
>
> ....
>
> Q: Mr. Thomas, when you were asked in the prior proceeding about this particular language, you said that it was the straw that broke the camel's back, didn't you?
>
> THOMAS: I did not say this language. I said the letter, and that's what I've always said.

*Id.* at 274–75.

Thomas' admission that the May 3 letter was "the final thing that swung me" is not the equivalent of an admission that it was the letter's disputed paragraph that did the swinging—not unless one disbelieves Thomas' repeated protestations to the contrary. The latter, however, is a question of credibility for the jury, not a question of law for the court. *See Hayman v. National Academy of Sciences,* 23 F.3d 535, 537 (D.C.Cir.1994). Because a reasonable jury could find that NASA would have terminated Borgo in the absence of a retaliatory motive, we reverse the grant of judgment as a matter of law.

### III

What was the straw that broke the camel's back? The answer, we conclude, is for

---

9. See also id. at 254 ("There is no sentence or paragraph in that letter where she says that she was going to do what I said."); *id.* at 261 ("[I]t was clear to me that she had indicated that she was not going to be supervised by me."); *id.* at 265 (stating that the termination letter's description of Borgo's conduct as "defiant and border[ing] on insubordination" referred to Borgo's suggestion in the May 3 letter that "to answer my memo is a waste of her time, is a waste of taxpayers' money").

the jury to decide. We therefore reverse the orders granting plaintiff summary judgment and judgment as a matter of law, and remand the case for a trial on the merits.