Victoria L. **BREEN**, Appellant,

v.

**DEPARTMENT OF TRANSPORTA-
TION, Federal Highway Administra-
tion and Norman Y. Mineta, Adminis-
trator, Appellees.**

No. 00–5363.

United States Court of Appeals,
District of Columbia Circuit.

Argued Nov. 20, 2001.

Decided March 15, 2002.

————

Kurt W. Hague argued the cause for appellant. With him on the briefs were Theodore Whitehouse and Joseph G. Davis.

Scott S. Harris, Assistant U.S. Attorney, argued the cause for appellees. With him on the brief were Roscoe C. Howard, Jr., U.S. Attorney, and R. Craig Lawrence, Assistant U.S. Attorney.

Before: GINSBURG, Chief Judge, ROGERS and GARLAND, Circuit Judges.

Opinion for the Court filed by Circuit Judge GARLAND.

GARLAND, Circuit Judge:

Victoria Breen, a former file clerk at the Federal Highway Administration, brought this suit alleging that she was discharged from her job in violation of the Rehabilitation Act, 29 U.S.C. § 791 *et seq.* Breen alleges that she suffers from mental and physical disabilities, but would have been able to perform her work with a reasonable accommodation. The district court granted summary judgment against Breen on the ground that no reasonable accommodation would have enabled her to perform the essential functions of her position. Because we find that there are genuine issues of material fact as to Breen's ability to perform with an accommodation, we reverse the judgment of the district court.

## I

Viewed in the light most favorable to the plaintiff, the facts are as follows. Breen began working as an office automation clerk at the Federal Highway Administration (FHWA) in 1991, with duties that included the maintenance of office files. For the first several years, she received "satisfactory" evaluations. Some time in 1994, in connection with taking time off for knee surgery, Breen developed a backlog of filing that she was unable to reduce in a timely fashion—to the growing dissatisfaction of her employer. Beginning in December 1994, the FHWA rated her performance as "needs improvement" and implemented a series of "Performance Improvement Plans" (PIPs), which, inter alia, admonished her to accomplish her filing duties more expeditiously.

In November 1995, Breen provided the FHWA with letters from her doctors that showed that she suffered from a variety of physical and psychiatric disorders, the one most relevant to the accommodation at issue in this case being obsessive-compulsive disorder.[1] The letter from Breen's psychiatrist, Dr. Julie Redditt, also suggested certain accommodations. Most relevant here were Dr. Redditt's suggestions for a "structured time schedule which rarely varies without at least a week's notice" and for an "[a]bsence of 'extra' or different tasks requested during her work period, especially the filing period." 1995 Redditt Letter at 4 (Nov. 15, 1995). The psychiatrist stated that Breen "is able to perform each of the required operations of her job as an office automation clerk," and that with the accommodations "Ms. Breen's performance could return to its previous level." *Id.* at 4, 5. Dr. Redditt suggested the same accommodations in a second letter dated February 12, 1996. 1996 Redditt Letter at 1 (Feb. 12, 1996).

Breen herself proposed accommodations at various times between the onset of her employer's dissatisfaction and her termination. Chief among these was an "alternative work schedule," pursuant to which she would have worked one hour past normal business hours every day for eight days, in exchange for one day off every two-week pay period—thus maintaining a normal eighty-hour pay period.[2] According to Breen, the "hour of quiet time after business hours to do solid filing" would have permitted her to complete her filing without the interruptions that she found difficult to deal with as a consequence of her obsessive-compulsive disorder. Rev. Breen Decl. ¶ 30; *see id.* ¶ 27. Breen requested this accommodation a number of times. At the end of her second and third PIPs in June and September 1995 respectively, Breen asked for an alternative work schedule that would have permitted her to work during the "quiet hours." *Id.* ¶¶ 6, 37. Breen also presented her request for an alternative work schedule at a meeting on February 29, 1996, *id.* ¶ 18, and again in writing one month later, Mem. from Breen to Perros (requesting "Alternative Work Schedule or overtime (with compensatory time)") (Apr. 1, 1996).

The FHWA declined to grant Breen the alternative work schedule, or any of the other accommodations she requested, and, on April 16, 1996, terminated her employment. One year later Breen filed this lawsuit, alleging that her termination was unlawful under the Rehabilitation Act, 29

---

1. An orthopedist also diagnosed Breen as having knee problems (chondromalacia and a laterally tracking patella).

2. Other accommodations requested by Breen included prior notification of the work that she would be required to do on a given day, a plastic floor mat to allow her stool to roll around the office filing area, and training another employee to cover for her when she was absent from the office.

U.S.C. § 791 *et seq.*, because the FHWA had failed to reasonably accommodate her disabilities. The FHWA moved to dismiss or alternatively for summary judgment. Both sides filed affidavits setting forth their versions of the facts, and Breen's counsel filed an additional affidavit pursuant to Federal Rule of Civil Procedure 56(f) requesting discovery. The district court granted summary judgment against Breen, without permitting discovery, on the ground that "no reasonable accommodation will enable her to perform the essential functions of her position." *Breen v. United States Dep't of Transp.*, No. 97–1003 (D.D.C. Sept. 11, 2000).

## II

The Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability" may be discriminated against by a federal agency "solely by reason of her or his disability." 29 U.S.C. § 794(a). The Act states that "[t]he standards used to determine whether this section has been violated in a complaint alleging employment discrimination under this section shall be the standards applied under [certain provisions of] the Americans with Disabilities Act [ADA]." 29 U.S.C. § 794(d). The ADA, in turn, bars discrimination against a "qualified individual with a disability ... in regard to ... the ... discharge of employees ... and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). A "qualified individual with a disability" is defined as "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." *Id.* § 12111(8); *see* 29

C.F.R. § 1614.203(a)(6) (EEOC Rehabilitation Act regulation).[3] Accordingly, an individual with a disability is "qualified" if he or she can perform the essential functions of the position with a reasonable accommodation. *Carr v. Reno*, 23 F.3d 525, 529 (D.C.Cir.1994). The ADA further defines the term "reasonable accommodation" to include "job restructuring [and] part-time or modified work schedules." 42 U.S.C. § 12111(9); *see* 29 C.F.R. § 1614.203(c)(2).

The district court granted summary judgment against Breen solely on the ground that no reasonable accommodation would have enabled her to perform the essential functions of her position. We review a grant of summary judgment de novo, and—as we have done in reciting the facts above—must view the evidence in the light most favorable to the nonmoving party. *Borgo v. Goldin*, 204 F.3d 251, 254 (D.C.Cir.2000). We may affirm a decision granting summary judgment only if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986)). There plainly is a genuine and material factual dispute in this case.

Breen contends that her proposed alternative work schedule would have permitted her to perform her responsibilities by giving her time during the day in which her work would not have been interrupted. In support of this assertion, she offers her own affidavit, an affidavit from a disabilities expert, Barclay Decl. ¶¶ 12–13, and the letters from her psychiatrist referred to above. The FHWA responds with three

---

**3.** In addition, the ADA defines the term "discriminate" to include "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity." 42 U.S.C. § 12112(b)(5)(A); *see* 29 C.F.R. § 1614.203(c)(1).

reasons why Breen's proposal would not have enabled her to perform her responsibilities.

First, the FHWA argues that Breen's proposed alternative work schedule would not have "increased [her] total number of hours," and hence would not have given her any more time to accomplish her filing than she had had before. FHWA Br. at 16. The FHWA is correct that the proposed alternative work schedule, like Breen's prior schedule, would have totaled only eighty hours per pay period. But this contention is wholly unresponsive to the thrust of Breen's request for accommodation. Her request was not for *more* time, but for *uninterrupted* time. *See* Rev. Breen Decl. ¶ 30 ("An alternative work schedule would have provided me with an hour of quiet time after business hours to do solid filing, with no interruptions."). The affidavits of Breen and her disabilities expert, as well as the letters from her psychiatrist, describe the nature of her problem as a difficulty in dealing with unexpected interruptions in assigned tasks. *See* Rev. Breen Decl. ¶ 30; Barclay Decl. ¶ 12; 1995 Redditt Letter at 4; *see also* Rev. Breen Decl. ¶ 27 ("Obsessive–Compulsive Disorder makes it hard for me to refocus after changing tasks. It was important for me to have an uninterrupted block of time to complete the filing."). All declare that this problem could have been overcome, and that Breen could have met her responsibilities, if her schedule had been restructured to provide not more time but uninterrupted time. Rev. Breen Decl. ¶ 30; Barclay Decl. ¶¶ 12–13; *see also* 1995 Redditt Letter at 4 (stating that Breen could perform her job if there were an "[a]bsence of 'extra' or different tasks requested during her work period, especially the filing period").

Second, the FHWA contends that, prior to termination, the agency had provided Breen with uninterrupted time, setting aside a period during her workday that was devoted solely to filing—to no avail. In support, the FHWA offers an affidavit to that effect by a second-level supervisor. Perros Decl. ¶¶ 18, 35. Breen, however, declares that the promised period of uninterrupted work never materialized; that, to the contrary, she was constantly interrupted during the appointed time, often with the approval of her direct supervisor. Rev. Breen Decl. ¶¶ 25–29. For purposes of reviewing a grant of summary judgment, we must take Breen's affidavit to be true. *See Anderson,* 477 U.S. at 255, 106 S.Ct. at 2513–14; *Borgo,* 204 F.3d at 257. As the FHWA acknowledged at oral argument, this creates a factual dispute that cannot be resolved on affidavits alone.

Finally, the FHWA asserts that it could not have provided the alternative work schedule Breen requested, which included a biweekly day off to balance the extra hour on other days, because her services were needed in the office every day. Perros Decl. ¶ 41. Breen disputes this, and asserts that the FHWA allowed a number of other employees with similar jobs in her department to work alternative schedules that permitted them to be out of the office during normal business hours. Rev. Breen Decl. ¶¶ 22–24.[4] This creates a genuine issue of material fact. *See Walsh v. United Parcel Serv.,* 201 F.3d 718, 726 (6th Cir.2000) (noting that employer's allowance of medical leave to other employees created genuine issue of fact as to whether grant of leave to plaintiff would have constituted reasonable accommodation); *Swanks v. Washington Metro. Area Transit Auth.,* 179 F.3d 929, 934 (D.C.Cir.1999)

---

4. In addition, Breen's Rule 56(f) affidavit specifically sought discovery on this point. Dean

Decl. ¶¶ 10(d), 11(c), (d).

(observing that an employer "'may not obtain summary judgment by declaring it has a policy when [the employee] may have evidence that [the employer] follows the policy ... selectively'" (quoting *Baert v. Euclid Beverage, Ltd.*, 149 F.3d 626, 632 (7th Cir.1998)) (brackets in original)); *Woodman v. Runyon*, 132 F.3d 1330, 1346 (10th Cir.1997) (holding that plaintiff demonstrated factual dispute by providing evidence that employer had granted another employee the requested accommodation in a similar situation).

*Carr v. Reno*, cited by the defendant, is not to the contrary. In *Carr*, the plaintiff, a coding clerk at the United States Attorney's Office, suffered from intermittent dizziness and nausea that frequently forced her to miss work without notice—477 hours in her first seven months alone. 23 F.3d at 527. Plaintiff sought an accommodation that the court described as "an open-ended 'work when able' schedule." *Id.* at 531. The Office denied the request on the ground that Carr's work, which involved coding papers relating to recent arrests in the District of Columbia, had a strict 4:00 p.m. deadline each day—a point plaintiff conceded. *Id.* at 530. Under those circumstances, we concluded that there was no genuine dispute that the requested accommodation would not have permitted Carr to perform the essential functions of her job. *Id.* at 530–31.[5]

In this case, by contrast, the plaintiff has not conceded that there was a critical element of her position—such as a daily deadline—that rendered the accommodation she proposed ineffectual. To the contrary, she has disputed that there is any such critical element. Accordingly, the

precedent that is relevant is not *Carr* but *Langon v. Department of Health and Human Services*, 959 F.2d 1053 (D.C.Cir. 1992). In that case, plaintiff Langon, an HHS computer programmer stricken with multiple sclerosis, sought the accommodation of working at home. HHS refused to grant Langon's request, asserting that "due to the exactness required of computer programmers like her, the short deadlines, and the frequent face-to-face contacts, her position did not lend itself to working at home." 959 F.2d at 1060 (internal quotation marks omitted). Langon countered with her own deposition testimony, which "disagreed with HHS about the length of the deadlines and the need for frequent face-to-face contacts," and which affirmed that her position did not require her to work in the office. *Id.* That conflict, we said, created "a genuine issue about whether, with the accommodation she sought, Ms. Langon could perform the essential functions of her position." *Id.* at 1061. We therefore reversed the district court's grant of summary judgment.

Breen, like Langon, has offered evidence disputing her employer's claim that the job restructuring she proposed was incompatible with the essential functions of her position. She has, therefore, raised a genuine issue of material fact as to the ground on which the district court ruled against her: the unavailability of any reasonable accommodation that would have permitted her to accomplish her required tasks.[6]

## III

In assessing the evidence on this appeal from a grant of summary judgment we do not, of course, reach any conclusions as to

---

5. *Carr* also noted that "it is the unusual Rehabilitation Act case that, like this one, can be resolved against the plaintiff without extensive fact finding." 23 F.3d at 531.

6. We do not consider whether there are also genuine disputes regarding the other accom-

modations that Breen requested, *see supra* note 2, because the briefs are not clear as to whether the others were intended as additional requirements or merely as alternatives to the proposed job restructuring.

the ultimate merits of Breen's case. The FHWA may yet be able to establish that it could not have reasonably accommodated Breen's disabilities, or that her Rehabilitation Act claim founders on other grounds. At this stage of the litigation, however, it is apparent that a genuine issue of material fact precludes summary judgment on the ground stated by the district court.[7] Accordingly, the judgment of that court is reversed and the case is remanded for further proceedings.

*Reversed and remanded.*

7. The FHWA argues that even if Breen raised a genuine dispute regarding that ground, we should nonetheless affirm the grant of summary judgment on another ground not relied upon by the district court. The FHWA contends that Breen did not inform it of her claimed disabilities and proposed accommodations in a timely fashion, and thus failed to participate in good faith in an interactive process that would have permitted the agency to determine the appropriate reasonable accommodation. *Cf.* 29 C.F.R. § 1630.2(*o*)(3). Resolving reasonable inferences in Breen's favor, however, she has raised a disputed question of material fact concerning this ground as well by proffering evidence that it was the FHWA that was responsible for the asserted delays of which the agency complains. *See, e.g.,* Rev. Breen Decl. ¶ 7 (averring that it took the FHWA almost a year to provide specific guidance as to the kind of medical documentation it required).