# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued April 13, 2006          Decided July 7, 2006

No. 04-5443

MARGARET A. BARNETTE,
APPELLANT

v.

MICHAEL CHERTOFF, SECRETARY OF THE DEPARTMENT OF
HOMELAND SECURITY,
APPELLEE

———

Appeal from the United States District Court
for the District of Columbia
(No. 02cv01897)

———

*Charles W. Day, Jr.* argued the cause for appellant. With
him on the briefs was *Joseph D. Gebhardt*.

*Peter D. Blumberg*, Assistant U.S. Attorney, argued the
cause for appellee. With him on the brief were *Kenneth L.
Wainstein*, U.S. Attorney, and *Michael J. Ryan*, Assistant U.S.
Attorney. *R. Craig Lawrence*, Assistant U.S. Attorney, entered
an appearance.

Before: ROGERS, TATEL, and BROWN, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* TATEL.

TATEL, *Circuit Judge*: Passed over for promotion, appellant, an African American woman in her fifties, claims that her employing agency discriminated against her on the basis of race and age when it selected a younger, white woman for the position she sought. After full discovery, the district court, finding appellant had failed to plead facts sufficient to refute the employing agency's proffered non-discriminatory reason for its decision, granted the agency's motion for summary judgment. Agreeing with the district court, we affirm.

## I.

Appellant, Margaret Barnette, an African American woman born in 1951, works for Customs and Border Protection (CBP). Located within the Department of Homeland Security (DHS), CBP includes those elements of the U.S. Customs Service, the Immigration and Naturalization Service, and the Department of Agriculture that dealt with border-control issues before DHS's creation in 2003. During the period in which the events at issue here took place—all prior to 2003—Barnette worked for the U.S. Customs Service.

In 2001, Barnette applied for the Assistant Director for Operations (ADO) position for the South Atlantic Customs Management Center (CMC). Located in Atlanta, the South Atlantic CMC is one of twenty regional centers through which Customs oversees regional ports and manages its staff and workload. The ADO "position is a management position, which involves operational functions of the Customs Service (as opposed to administrative functions, such as personnel matters), including passenger processing, inspection of cargo, inspection of conveyances, and other programs." *Barnette v. Ridge*, Civ. No. 02-1897, 2004 U.S. Dist. LEXIS 27546, at *4 (D.D.C. Nov. 15, 2004).

Robert Gomez, a GS-15 and Barnette's immediate supervisor, served as ADO until Customs promoted him to Director of Field Operations in 2001, thus creating the vacancy at issue in this case. Although Gomez served as ADO at the GS-15 grade, once he left the post Customs advertised it at the GS-14 level.

Although Barnette had spent twenty-two years in administrative personnel positions—including her first seven years at Customs—at the time she applied for the ADO she was a GS-14 serving as an Operations Specialist at the South Atlantic CMC, her second operations position since her 1995 transfer from personnel. As an Operations Specialist, her responsibilities included "executing, managing, coordinating and overseeing [some of the same] Customs/South Atlantic CMC core processes" managed by the ADO. Barnette ADO Application 3 (Apr. 16, 2001). Unlike her last personnel position, a GM-14 supervisory post, Barnette's permanent operations positions were all non-supervisory. She nonetheless acquired supervisory experience in operations when, following Gomez's promotion, she served a four-month detail as Acting ADO. While serving in operations positions, Barnette received several performance awards.

After reviewing all ADO applications, George Heavey, Executive Director of Field Operations in Washington and Gomez's supervisor, recommended to the selecting official, Bonni Tischler, Assistant Commissioner for Field Operations, that she choose Michelle James, not Barnette, to fill the ADO position. Tischler did so based solely on Heavey's recommendation. Heavey, a white man, explained that after consulting Gomez, a white Hispanic man, he recommended James, a white woman fifteen years younger than Barnette, based on her reputation as a "key player," "a dynamic leader," and a "good communicator," as well as on Gomez's opinion that

James's front line operations experience would be valuable in the ADO post. Heavey Dep. 28, 34, 55. Unlike Barnette, James had spent her entire eight-year career at Customs in operations positions such as Customs Inspector, Program Officer, Supervisory Customs Inspector, and Chief Inspector at the South Atlantic CMC.

Following James's selection, Barnette filed a complaint in the U.S. District Court for the District of Columbia alleging that Customs denied her the promotion because of her race and age in violation of Title VII of the Civil Rights Act of 1964 as amended, 42 U.S.C. § 2000e-16(a), and the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 633a(a). Later, after Customs denied her a temporary promotion to Customs Port Director for the Port of Atlanta, Barnette amended her complaint to include a charge of retaliation in violation of Title VII. Following full discovery, the district court found that Barnette had failed to present evidence sufficient to negate Customs' proffered non-discriminatory reason for selecting James—that it preferred James's greater operations experience over Barnette's greater personnel and supervisory experience. *Barnette*, 2004 U.S. Dist. LEXIS 27546, at *17-21. Accordingly, the district court granted summary judgment to the government and, for reasons not at issue here, dismissed Barnette's retaliation claim. *Id*. at *22.

On appeal, Barnette challenges only the award of summary judgment regarding the ADO promotion. Barnette argues that she provided sufficient evidence for a reasonable jury to find that Customs' proffered non-discriminatory reason for James's selection was pretext for discrimination. Reviewing the district court's summary judgment award de novo, we view the evidence in the light most favorable to Barnette, the non-moving party. *Borgo v. Goldin*, 204 F.3d 251, 254 (D.C. Cir. 2000). We will affirm the award of summary judgment only if there is

no genuine issue as to any material fact and the government is entitled to judgment as a matter of law. *Id*.

## II.

Title VII requires that "[a]ll personnel actions affecting employees or applicants for employment . . . in executive agencies . . . be made free from any discrimination based on race." 42 U.S.C. § 2000e-16(a). The ADEA requires that "[a]ll personnel actions affecting employees or applicants for employment who are at least 40 years of age . . . in executive agencies . . . be made free from any discrimination based on age." 29 U.S.C. § 633a(a). Given that Barnette offers no direct evidence of discrimination, to survive summary judgment and earn the right to present her case to a jury, she must resort to the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). *Cones v. Shalala*, 199 F.3d 512, 516 (D.C. Cir. 2000); *see also Carter v. George Washington Univ.*, 387 F.3d 872, 878 (D.C. Cir. 2004) (explaining that the *McDonnell Douglas* framework applies to ADEA claims). Under *McDonnell Douglas*, Barnette bears the initial burden of establishing a prima facie case, meaning she must prove by a preponderance of the evidence "that (1) she is a member of a protected class; (2) she suffered an adverse employment action; and (3) the unfavorable action gives rise to an inference of discrimination." *Brown v. Brody*, 199 F.3d 446, 452 (D.C. Cir. 1999).

Because the district court found that Barnette successfully made out a prima facie case, *Barnette*, 2004 U.S. Dist. LEXIS 27546, at *13—a finding undisputed on appeal—we proceed directly to *McDonnell Douglas*'s second step at which the burden shifts to Customs to articulate a non-discriminatory reason for its decision to select James rather than Barnette for the ADO position. *McDonnell Douglas*, 411 U.S. at 802. Customs' burden, however, is one of production, meaning it

"need not persuade the court that it was actually motivated by the proffered reasons. It is sufficient if [Customs'] evidence raises a genuine issue of fact as to whether it discriminated against [Barnette]." *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981) (citation omitted).

In the district court, Customs advanced two explanations for James's selection. First, pointing out that the ADO position had been downgraded to GS-14 after Gomez's promotion, Customs claimed it was agency policy to consider internal applicants seeking promotion to a higher graded position (like James, then a GS-13) over applicants seeking a lateral transfer (like Barnette, then a GS-14). Second, Customs asserted that although both candidates were qualified, it preferred James's greater operations experience over Barnette's greater administrative and supervisory experience. Given Customs' minimal burden of production, and given that each of these two explanations is "both reasonable and non-discriminatory," they may serve as legitimate, non-discriminatory reasons for James's selection and are "enough to take us to the third step under *McDonnell Douglas*." *Fischbach v. D.C. Dep't of Corr.*, 86 F.3d 1180, 1182 (D.C. Cir. 1996). At that stage, Barnette "must be afforded the opportunity to prove by a preponderance of the evidence" that Customs' proffered preference for James's qualifications was "not its true reason[], but w[as] a pretext for discrimination." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000) (internal quotation marks omitted).

As to Customs' first explanation—its preference for promotees over lateral transfers—Barnette argues that nothing in the record demonstrates Customs actually had such a policy. The district court thought the policy's existence was "undisputed," *Barnette*, 2004 U.S. Dist. LEXIS 27546, at *5, but this is incorrect. Barnette did challenge the existence of the policy, stating that "contrary to [Customs'] statement, [the

evidence] does not indicate any priority in which the candidates are considered." Pl.'s Statement of Material Facts in Genuine Dispute 3. Moreover, viewing the evidence in the light most favorable to Barnette, we see nothing in the record clearly indicating that Customs actually had such a preference. Indeed, government counsel conceded at oral argument that the record fails to "ultimately support[] that point that there was a policy." Oral Arg. at 18:33.

The district court's error, however, has no effect on the propriety of its judgment because, as both parties agree, Heavey based his recommendation solely on Customs' second explanation—James's reputation and qualifications. Attacking this second explanation, Barnette points to three types of evidence she asserts "prove by a preponderance of the evidence" that Customs' alleged preference for James's qualifications was "pretext for discrimination." *Reeves*, 530 U.S. at 143.

First, although acknowledging that "an employer has the discretion to choose among equally qualified candidates," Appellant's Br. 22-23 (quoting *Burdine*, 450 U.S. at 259) (appellant's emphasis omitted), Barnette argues that her credentials were so superior to James's that Customs' obvious "misjudg[ment]" is evidence of pretext, *id*. at 23. To support her claim, Barnette cites her higher grade level at the time of the selection (she was a GS-14 while James was a GS-13). She points to her greater supervisory experience—she had higher level supervisory experience (GM-14 compared to James's GS-13) and had spent more years as a supervisor than James (four years to James's 6-8 months at GS-12 and forty-two hours at GS-13). She contends that her personnel and classification experience gave her additional qualifications since she "spent years observing and performing operational jobs at Customs so that she would be able to classify them." *Id*. at 24. Barnette also argues that she had comparable substantive operations

experience to James (she had five years, James had eight), and points to her service as Acting ADO as evidence that she possessed the required substantive experience.

Finding that operations and administrative skills "are critical to the proper conduct of agency business," *Barnette*, 2004 U.S. Dist. LEXIS 27546, at *17, and that the candidates' backgrounds were comparable, *id*. at *18, the district court accepted Customs' preference for James's experience as a legitimate, non-discriminatory basis for hiring her, *id*. at *17. On this point, we agree with the district court. As we explained in *Aka v. Washington Hospital Center*, 156 F.3d 1284 (D.C. Cir. 1998) (en banc), a reasonable jury may infer discriminatory intent when an employer fails to select the "significantly" or "markedly" more qualified candidate. *Id*. at 1294, 1298. In *Aka*, we found that a qualifications differential gave rise to an inference of discrimination where the plaintiff-applicant for a pharmacy position had a business administration degree and nineteen years of non-substantive experience in the hiring pharmacy, as compared to the selectee who had no degree and two months of non-substantive experience in a different pharmacy. *Id*. at 1296, 1298-99. We detect no similarly significant qualifications differential in this case. To be sure, James had less supervisory experience overall (one year to Barnette's four) and her supervisory positions were at a lower grade. But James's grade level qualified her for the position, she had significant operations experience in relevant areas, and, unlike Barnette, she had a permanent appointment to a position that supervised employees performing operations functions. James's grade level together with her strong supervisory and substantive experience distinguish this case from those in which we found a sufficiently significant qualifications differential to give rise to an inference of discrimination. *See, e.g.*, *Lathram v. Snow*, 336 F.3d 1085, 1091-92 (D.C. Cir. 2003) (finding that a qualifications differential gave rise to an inference of

discrimination where the plaintiff-applicant for a public affairs position had three years of public affairs experience and the selectee had none).

Our decision in *Stewart v. Ashcroft*, 352 F.3d 422 (D.C. Cir. 2003), also a failure-to-promote case, supports the district court's judgment. Holding that the kinds of distinctions Barnette relies on are insufficient to show pretext, we explained (1) that the applicants' relative grade levels at the time of application are irrelevant, for "it says little about the level of relative qualifications . . . to serve," *id*. at 429; (2) that courts must defer to the employer's decision as to which qualities required by the job (substantive versus managerial) it weighs more heavily, *id*.; and (3) that courts should refuse to "assess[] the significance of small differences" in substantive experience (such as the subject matter of candidates' work) or length of service (two years versus six months), *id*. at 430 (internal quotation marks omitted). Given *Stewart*, Barnette offers no basis for questioning Customs' judgment that James was better suited for the ADO position. Both Barnette and James were eligible to apply, both had the requisite substantive and supervisory experience, and both brought unique strengths to the position. Faced with such nuanced differences in candidate credentials, "we must assume that a reasonable juror who might disagree with the employer's decision, but would find the question close, . . . would usually assume that the employer is more capable of assessing the significance of small differences in the qualifications of the candidates, or that the employer simply made a judgment call." *Aka*, 156 F.3d at 1294. Thus, rather than serving as evidence of pretext, the qualifications differential Barnette highlights "merely indicate[s] a 'close call'" and fails to move her case "beyond summary judgment." *Stewart*, 352 F.3d at 430.

Relying on *Cones v. Shalala*, Barnette argues that a court should infer pretext where an employee who served in a position in an acting capacity is passed over for a permanent promotion to that same position in favor of an applicant without previous experience in the position. This misreads *Cones*. There, the employing agency attempted to differentiate white employees it promoted from the African American plaintiff it refused to promote by pointing to the white employees' prior service in their positions in an acting capacity. *Cones*, 199 F.3d at 519. Finding this distinction inconclusive, we explained that a jury "could just as easily infer that the alleged differences between Cones and the white [employees] were irrelevant, or that they were themselves the product of discrimination since the [agency] had failed to permanently promote Cones . . . when he was serving in an acting capacity." *Id*. We mentioned Cones's temporary service in the position he sought not for the affirmative proposition Barnette suggests, but only because his temporary service undermined the agency's attempt to distinguish Cones from the promoted white employees. In *Fischbach*, moreover, we admonished the district court for second-guessing the agency's decision to pass over the plaintiff in favor of another applicant notwithstanding that the plaintiff had previously served in the position he sought in an acting capacity and the selectee had not. 86 F.3d at 1181, 1183.

The second category of evidence Barnette claims demonstrates pretext relates to the downgrading of the ADO position from GS-15, when Gomez held the job, to GS-14. According to Barnette, the record contains "ample evidence" that Customs downgraded the ADO position as part of a "transparent ruse" to "allow[] Ms. James to secure the position." Appellant's Br. 2, 22. Barnette argues that because "[a]s a GS-13, Ms. James would not have been eligible to apply for the ADO position if it had remained a GS-15 when the vacancy was posted . . . the Customs Service downgraded the position to

allow Ms. James to apply." *Id*. at 22. Such manipulation of "the selection procedures," she insists, "constitutes evidence of pretext." *Id*. at 21 (citing *Krodel v. Young*, 748 F.2d 701, 711 (D.C. Cir. 1984), which held that suspicious hiring practices, together with statistical and anecdotal evidence of discrimination, were sufficient to create an inference of pretext).

Barnette's "ample evidence" consists of the grade reduction itself, James's GS-13 grade, Customs' concurrent plans to upgrade several Director of Operations positions to the Senior Executive Service (SES), and Gomez's statement to Barnette that "the ADO position would likely be upgraded back to GS-15." Appellant's Br. 7, 19, 22. None of this evidence, however, demonstrates that Customs actually manipulated the ADO position grading process. Moreover, Customs' explanation for its actions and its supporting evidence dispel any suspicion of manipulation. Properly classified as a GS-14, the ADO was upgraded to accommodate Gomez who came to the South Atlantic CMC as a GS-15. To support the upgrade, Customs added responsibilities to the ADO position, responsibilities it later removed when Gomez was promoted. Barnette challenges neither of these propositions, nor does she dispute several other facts that support Customs' contention that the ADO position was properly graded at the GS-14 level: (1) it was processed through the Customs' Human Resources Department, a process over which neither Gomez nor Heavey—the alleged discriminators—had any control; (2) the *General Schedule Supervisory Guide* states that the grade of an assistant position should be one grade lower than the position to which it reports and, as Customs points out, "[a]t the time of the selection . . . the director position at the Port of Atlanta was still a GS-15 position," so "the ADO position correctly remained a GS-14 position," Appellee's Br. 16; and (3) the *other* assistant director position in the Port of Atlanta was occupied at the GS-14 level. Emphasizing the impropriety of "judicial micromanagement of

business practices," the district court explained—correctly in our view—that "[w]hether it would be appropriate" to classify the ADO position as a GS-15 prior to the Atlanta Director's elevation to the SES "is a decision that must be left to [Customs] to determine without micromanagement from the Court." *Barnette*, 2004 U.S. Dist. LEXIS 27546, at *16-17.

As her last piece of evidence allegedly demonstrating pretext, Barnette points to James's ADO application, which, according to Barnette, inappropriately included a supervisory-level appraisal form. As Barnette sees it, the supervisory-level form allowed Gomez, also James's supervisor, to provide a far more detailed description of James's responsibilities than would have been possible had James submitted the non-supervisory appraisal sheet appropriate for her position. Barnette also argues that Gomez intentionally and inappropriately enhanced James's review "to make her appear *more* eligible" for the GS-14 ADO position. Appellant's Br. 25 (emphasis added). But Barnette presents no evidence either that the enhanced review affected James's basic eligibility for the ADO position or that Heavey relied on the "exaggerat[ed]" description of her supervisory experience when recommending James. *Id.* So even if a jury concluded that Gomez intentionally manipulated the appraisal form in order to exaggerate James's supervisory experience, that conclusion would do nothing to undermine Customs' non-discriminatory explanation for hiring James—its preference for her greater operations experience over Barnette's greater supervisory and administrative experience.

## III.

"This Court will not reexamine governmental promotion decisions where it appears the Government was faced with a difficult decision between two qualified candidates, particularly when there is no other evidence that race [or age] played a part in the decision." *Stewart*, 352 F.3d at 430. Although we

recognize Ms. Barnette's qualifications and her years of distinguished government service, she has failed to show that Customs' proffered non-discriminatory basis for James's selection was pretext for discrimination. We therefore affirm the district court's grant of summary judgment for the government.

*So ordered.*