**Jefferson G. LACORTE, Plaintiff,**

v.

**Paul H. O'NEILL, Secretary of the Treasury, Defendant.**

**No. CIV. A. 97–172(RWR).**

United States District Court, District of Columbia.

March 27, 2001.

Joseph Marc Sellers, Cohen, Milstein, Hausfeld & Toll, P.L.L.C., Washington,

DC, Joseph Robert Guerra, Michael Joseph Hunseder, Sidley & Austin, Washington, DC, Avis E Buchanan, Susan E. Huhta, Washington Lawyers' Committee For Civil Rights, Washington, DC, for plaintiff.

Edward Alkalay, U.S. Attorney's Office, Washington, DC, for defendant.

## MEMORANDUM & OPINION

ROBERTS, District Judge.

Plaintiff Jefferson G. LaCorte brings this action pursuant to the Rehabilitation Act of 1973 (29 U.S.C. § 701 *et seq.*) alleging that defendant violated his federal civil rights by denying him employment as a Uniformed Officer of the United States Secret Service based upon his diabetes. Defendant[1] has filed a motion for partial summary judgment. Because I find that genuine issues of material fact exist as to (1) how or if plaintiff's diabetes affects his ability to perform the essential functions of the job he seeks; (2) whether plaintiff's proposed "reasonable accommodations" would allow him to perform those functions; (3) what accommodations plaintiff is actually requesting; and (4) the requirements of maintaining a "constant state of readiness," which both parties agree is an essential function of a Secret Service agent's job, defendant's motion will be denied.

## BACKGROUND

Plaintiff is a Type I diabetic.[2] (Pl.'s Opp'n Def.'s Mot. Dismiss ("Pl.'s Opp'n") at 3; Def.'s Statement of Facts ("Def.'s Facts") ¶ 38.) Since 1988, he has sought hospitalization for "moderate" hypoglycemia[3] on three occasions. (Pl.'s Opp'n at 15; Def.'s Facts ¶ 40.) On the first occasion, he had the flu, which prevented him from ingesting any food, including glucose. (*Id.*) He now regularly receives flu shots. (Pl.'s Opp'n at 16.) On the second occasion, plaintiff suffered hypoglycemia to the point of sweating.[4] (Def.'s Facts ¶ 41.) On the third occasion, in 1995, plaintiff apparently experienced the ill effects of too much drink, which prevented him from ingesting food, and went to the hospital to receive intravenous delivery of glucose. (Pl.'s Opp'n at 16; Def.'s Facts ¶ 42.) Plaintiff alleges he has not experienced any severe hypoglycemic symptoms since. (Pl.'s Opp'n at 14.)

In the Spring of 1994, plaintiff applied for employment as a Uniformed Division Officer with the Office of Protective Opera-

---

1. Paul H. O'Neill, the current Secretary of the Treasury, is substituted as the defendant in lieu of former Secretary Rubin. *See* Fed. R.Civ.P. 25(d)(1).

2. In Type I diabetes, the body does not produce insulin and ingested glucose remains in the bloodstream. (Pl.'s Opp'n at 4; Def's Facts ¶ 1.) This condition is treated with injections of synthetic insulin. (Pl.'s Opp'n at 4.) In Type II diabetes, either some or an excessive amount of insulin is produced. (Pl.'s Opp'n at 4; Def's Facts ¶ 2.) The body processes sufficient glucose to function, but side effects may occur from the unprocessed glucose in the bloodstream. (Pl.'s Opp'n at 4–5; Def's Facts ¶ 2.) Type I and Type II diabetics develop regimes for administering insulin that are tailored to their diet and exercise level. (Pl.'s Opp'n at 5.)

3. Hypoglycemia is a condition suffered by a diabetic as a result of lowered blood sugar levels. (Pl.'s Opp'n at 8; Def's Facts ¶ 4.) Mild hypoglycemia initially produces symptoms such as hunger, tingling in the fingers and lips, sweating, or increased heartbeat. (Pl.'s Opp'n at 8; Def's Facts ¶ 6.) These symptoms can be dissipated in two to fifteen minutes by ingesting small amounts of glucose, in such forms as hard candy, crackers, soda, or orange juice. (Pl.'s Opp'n at 9; Def's Facts ¶ 9.) If untreated, severe hypoglycemia can lead to dizziness, confusion, change in vision, or loss of consciousness. (Pl.'s Opp'n at 9.)

4. Plaintiff may have also had the flu on this occasion. (Pl.'s Opp'n at 15.)

tions of the United States Secret Service (the "Secret Service"), a division of the Department of the Treasury ("DOT"). (Pl.'s Opp'n at 3; Def.'s Facts ¶ 51.) He had previously been employed as a weapons-carrying Executive Protection Agent at Vance Executive Protection, where he performed protective duties including an assignment safeguarding members of the Saudi Royal Family. (Pl.'s Opp'n at 17–19; Def.'s Facts ¶ 48.)

As part of the application process, plaintiff completed a medical questionnaire and submitted to a pre-offer medical exam. (Dep't of Treasury, EEO Administrative Complaint, Final Decision, Oct. 24, 1996 ("EEO Ruling") at 2.) The Secret Service initially rejected plaintiff because of a blanket policy against hiring any "insulin-dependant diabetic." (Pl.'s Opp'n at 25; Def.'s Facts ¶ 51.)

Plaintiff filed an EEO complaint challenging his nonselection. (EEO Ruling at 1.) Thereafter, Dr. Bruce N. Butler, a doctor retained by the Secret Service, issued an opinion that concluded plaintiff should not be hired. (Def.'s Facts ¶ 52–60.) Defendant alleges this report was based on plaintiff's medical examination and a review of Uniformed Division officers' job duties. (Def.'s Facts ¶ 52.)

The DOT's Office of Equal Opportunity ruled that (1) plaintiff was not a qualified disabled individual who had shown he could perform as a Uniformed Division officer with or without reasonable accommodation; (2) plaintiff was entitled to an individual determination as to his ability to perform as a Uniformed Division officer; and (3) the Secret Service's policy of subjecting applicants to pre-offer medical examinations and questionnaires appeared to violate the American with Disabilities Act and the Rehabilitation Act. (EEO Ruling at 6.) Plaintiff received a notice of his right to sue (Compl.¶ 17) and filed this action.

Defendant has moved for partial summary judgment.

## DISCUSSION

Summary judgment is appropriate where the record shows that "there is no genuine issue as to any material fact and [ ] the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). A party seeking summary judgment must provide the district court with a factual record sufficient to demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The moving party may support its motion successfully if it " 'inform[s] the district court of the basis for its motion, and identif[ies] those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.' " *Frito–Lay, Inc. v. Willoughby,* 863 F.2d 1029, 1032 (D.C.Cir. 1988) (citing *Celotex,* 477 U.S. at 323, 106 S.Ct. 2548 (quoting Fed.R.Civ.P. 56(c))). In this case, the Court must determine whether defendant, as the movant, has provided sufficient evidence that no dispute exists concerning those facts relevant to assessing plaintiff's claim under the Rehabilitation Act.

Section 504 of the Rehabilitation Act of 1973 provides that "[n]o otherwise qualified individual with a disability ... shall, solely by reason of his or her disability ... be subjected to discrimination ... by any Executive Agency." 29 U.S.C. § 794(a). The standards for determining a violation are the same as those applied under the Americans with Disabilities Act. 29 U.S.C. § 794(d). To establish a prima facie case of discrimination, the plaintiff must show that he is handicapped;[5] that he can perform the essen-

---

5. Defendant concedes that, as a diabetic, plaintiff is an individual with a disability un-

tial functions of his job with reasonable accommodation; and that he was discharged due to his disability. *Barth v. Gelb*, 2 F.3d 1180, 1186 (D.C.Cir.1993).

Defendant argues that plaintiff's medical history indicates he is at continual risk of severe hypoglycemia, which could suddenly affect his ability to act and respond, and that any accommodation of this condition would pose an undue hardship on the Secret Service. Plaintiff argues that he is not at a significant risk of severe hypoglycemia, that his condition would not affect his employment as a Secret Service agent, and hence defendant cannot establish as a matter of law that his diabetes precludes him from performing, with reasonable accommodation, the essential functions of the job he seeks.

■ On this record, there are disputed issues of material fact present. First, there is a significant dispute as to what risk, if any, plaintiff's symptoms pose to his ability to perform the "essential functions" of a Secret Service officer. This dispute boils down to the characterization of plaintiff's medical history. Plaintiff maintains that he suffers only once a month or so from "mild" diabetic symptoms of a slight tingling in his fingers or lips which would not interfere with his job performance and can be dispelled after three or so minutes by eating a simple sugar snack; that he has suffered from "moderate" diabetic symptoms which required hospitalization on only three previous occasions—two when he had the flu (for which he now gets regular flu shots) and one during college that produced only excessive sweating; and that he was able to perform under conditions similar to those of the Secret Service as a private security guard assigned to members of the Saudi Royal Family. (Pl.'s Opp'n at 27–30.) Defendant counters that plaintiff's medical history indicates that he is at risk of "serious" hypoglycemic symptoms that may recur at any time and require hospitalization; that the risk of these symptoms cannot be gauged with any medical accuracy; and that even when he experiences milder symptoms, plaintiff still requires a snack and two to ten minutes of recovery time before being able to perform. (Def.'s Mot. at 25–29.) At bottom, there is a question as to how disabling the effects of plaintiff's diabetes actually are.

Second, there is a dispute about whether plaintiff's proposed "reasonable accommodations" would allow him to perform these essential functions. Both parties present arguments on this point that closely relate to their characterization of plaintiff's medical condition. Plaintiff maintains that he requires only a fanny pack containing a snack, a pocket-sized glucometer, "perhaps" a small vial or pen containing insulin, and permission to self-administer blood tests and insulin on his regularly scheduled breaks. He says he needs no scheduling of breaks or activity that is any different from that of any other junior Secret Service agent. (Pl.'s Opp'n at 38–40.) He contends these measures would not interfere with his duties, the Secret Service's mission, or the Secret Service's administration. (*Id.*) Defendant counters that such measures are insufficient to guarantee his performance, because such measures were available to him on the three occasions when he required hospitalization. (Def.'s Mot at 29–31.) This is a factual dispute.

Third, there appears to be either a dispute, or at least a lack of clarity, about exactly what "reasonable accommodations" plaintiff is requesting. Plaintiff maintains that he requests only the fanny pack and permission to self-administer blood and in-

der the Rehabilitation Act. (Def.'s Mot. Partial Summ. J. ("Def.'s Mot.") at 24.) *See Arnold v. United Parcel Service, Inc.,* 136 F.3d 854, 866 (1st Cir.1998).

sulin tests. (Pl.'s Opp'n at 38–40.) Defendant maintains, though, that based upon the measures recommended by plaintiff's expert witness, Dr. Christopher Saudek, in his report and deposition testimony (Def.'s Reply to Pl.'s Opp'n to Def.'s Mot. Partial Summ. J. ("Def's Reply") at 5–6), plaintiff appeared to be requesting regularized shifts and breaks which would entitle plaintiff to a level of predictability to which junior officers are not entitled, impose an undue burden on the Secret Service and increase risks for those officials whom he protects. It would also provide additional evidence, defendant asserts, that plaintiff's fanny pack accommodation is insufficient to allow him to perform as a Secret Service agent. (Def's Reply at 5–6; Def's Opp'n at 31–32.)

Finally, there appears to be a dispute about what the "essential functions" of a junior Secret Service officer are. Both parties agree that officers must (1) be able to maintain a "constant state of readiness" for long periods; (2) work long, unpredictable hours with inconsistent meal and bathroom breaks; and (3) be responsible for the lives of top government officials, including the President of the United States. (Pl.'s Opp'n at 19–20; Def.'s Mot. at 7–9.) The dispute centers on what a "constant state of readiness" requires. Plaintiff argues that a "constant state of readiness" does not mean that an agent can never be at risk of physical impairment. He bases this assertion on evidence that non-diabetic officers have experienced different disabling physical conditions while working, including heart attacks, falling asleep, common maladies, and generally poor physical fitness; and that the Secret Service already employs two diabetic officers who self administer insulin to control their diabetes. (Pl.'s Opp'n at 34–38.) Defendant counters that, although a "constant state of readiness" is not equivalent to the complete elimination of any risk of incapacitation on duty, plaintiff's diabe-tes poses an additional risk of disability beyond those that "are theoretically present when hiring anyone[;]" and the two diabetic officers who have Type II diabetes do not present this additional risk, as neither has ever been hospitalized for a diabetes-related condition. (Def.'s Reply at 3–4.) These disputed issues of material fact preclude summary judgment.

## CONCLUSION

The parties disagree about how disabled plaintiff is and what the Secret Service would have to do in order to accommodate him. Namely, the parties disagree about (1) how or if plaintiff's diabetes affects his ability to perform the essential functions of the job he seeks; (2) whether plaintiff's proposed "reasonable accommodations" would allow him to perform those functions; (3) what accommodations plaintiff is actually requesting; and (4) the requirements of maintaining a "constant state of readiness," which both parties agree is an essential function of a Secret Service agent's job. These are questions of fact. Under the standard for summary judgment, defendant has failed to demonstrate that the underlying questions of fact are not genuinely disputed, or that their resolution would not affect the outcome of this suit under the governing law. Accordingly, it is hereby

ORDERED that defendant's motion be, and hereby is, denied.