**Essie J. BAKER, Plaintiff,**

v.

**John E. POTTER, Postmaster General, United States Postal Service, Defendant.**

No. CIV.A. 00–0786(RMU).

United States District Court, District of Columbia.

Dec. 2, 2003.

Anthony L. Michaels, Beveridge & Diamond, P.C., Washington, DC, for plaintiff.

Laurie J. Weinstein, Office of the United States Attorney for the District of Columbia, Washington, DC, for defendant.

## MEMORANDUM OPINION

### GRANTING IN PART AND DENYING IN PART THE DEFENDANT'S RENEWED MOTION FOR SUMMARY JUDGMENT

URBINA, District Judge.

## I. INTRODUCTION

Plaintiff Essie Baker brings suit pursuant to Title VII of the Civil Rights Act, 42 U.S.C. §§ 2000e *et seq.*, and the Rehabilitation Act of 1973, 29 U.S.C. §§ 701 *et seq.*, alleging that the defendant, John E. Potter,[1] named in his official capacity as Postmaster General of the United States Postal Service ("the defendant" or "Postal Service"), discriminated against her based on her sex, disability and in retaliation for her prior Equal Employment Opportunity ("EEO") complaints. The matter is currently before the court on the defendant's renewed motion for summary judgment. Because the plaintiff fails to carry her burden with respect to her discrimination claims, the court grants the defendant's motion on all but one claim. As for the remaining claim, the court denies the defendant's motion because a genuine issue of material fact precludes summary judgment.

## II. BACKGROUND

### A. Factual Background

The plaintiff, an employee of the Postal Service, is a letter carrier working out of the Customs House Station, a small post office station serving approximately 15–17 routes in Washington, D.C. Pl.'s Opp'n to Def.'s Renewed Mot. for Summ. J. ("Pl.'s Renewed Opp'n") at 1–2. Initially filed as two complaints but now consolidated into one, the case before the court involves two separate actions taken by the Postal Service that the plaintiff believes were discriminatory. Specifically, she alleges that the defendant twice violated federal anti-discrimination law: first, by altering her employment status from carrier to clerk, and second, by denying her a promotion to the position of Acting Supervisor. Compl. (00–0786) at 1–2; Compl. (00–1104) at 1; Pl.'s Renewed Opp'n at 1.

The first action arises out of a long-running dispute ("the 1992 Acting Supervisor dispute") between the plaintiff and the Postal Service regarding her opportunity for promotion to the position of Acting Supervisor. The plaintiff states that despite her expressed interest and a 1990 settlement under which the defendant agreed to afford her the opportunity to serve as Acting Supervisor as long as her physical limitations would allow, the Postal Service refused to appoint her as Acting Supervisor from March 1992 onward, instead appointing three male co-workers to the position. Pl.'s Renewed Opp'n at 2–6, 32 n. 12 & Ex. 10; Def.'s Renewed Mot. Ex. 8. In September 1992, the plaintiff filed an Equal Employment Opportunity ("EEO") complaint alleging discrimination based on disability, sex, and retaliation.

---

1. Although the complaint names William J. Henderson as the defendant in this action, pursuant to Federal Rule of Civil Procedure 25(d)(1), John E. Potter substitutes as the proper defendant. FED. R. CIV. P. 25(d)(1). When a public officer is a party to an action in his official capacity and during its pendency ceases to hold office, the officer's successor substitutes as a party. *Id.*

Pl.'s Renewed Opp'n at 6 & Ex. 18 at 2. In February 2000, after several years involving the complaint's withdrawal and reinstatement as well as multiple appeals, the Equal Employment Opportunity Commission ("EEOC") issued a final decision that dismissed the plaintiff's claims. *Id.* Ex. 22 at 4.

The second action stems from a wrist injury sustained by the plaintiff in 1995 while she was delivering mail. *Id.* at 13. After a period of recuperation, she returned to work in 1996, signing a contract known as a Rehabilitation Job Offer ("the 1996 Offer") that established her position as a "Modified Carrier." *Id.* Within a few months, however, she noticed that her pay stubs reflected the position of "Modified Part–Time Flexible Clerk" ("PTF Clerk"). *Id.* at 14. After requesting a copy of the contract, she discovered that her Modified Carrier title had been "whited-out" and replaced with the PTF Clerk title, a change that the plaintiff alleges amounted to a demotion. *Id.;* Compl. (00–0786) at 1. These events prompted the plaintiff to file another EEO complaint in March 1997 with the EEOC. Pl.'s Renewed Opp'n at 14 & Ex. 38 at 1. Her complaint alleged discrimination based on disability and retaliation for prior EEOC activity. *Id.* In September 1999, after an administrative law ruling, the Postal Service issued a final agency decision finding no discrimination and closing the case. *Id.* Ex. 38 at 1.

## B. Procedural History

In informing the plaintiff of their final decisions, both the Postal Service and the EEOC included a notice of right to file a civil action in federal court (a "right-to-sue" letter). *Id.* Exs. 38 at 1–2, 22 at 5. With the letters in hand, the plaintiff[2] filed two complaints[3] in the spring of 2000. Mirroring her EEOC claims, the first complaint alleged discrimination based on disability, sex, and retaliation; the second, discrimination based on disability.[4] Compl. (00–0786) at 1–2; Compl. (00–1104) at 1. Although the initial complaints did not identify the statutory bases for the actions, the parties' subsequent submissions indicate that the plaintiff premises her claims on Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.,* and sections 501 and 504 of the Rehabilitation Act of 1973, 29 U.S.C. §§ 791 *et seq. See, e.g.,* Pl.'s Opp'n at 19, 31, 36.

The defendant moved to dismiss both complaints for failure to timely file the complaints, or, in the alternative, for summary judgment. Def.'s Mot. to Dismiss or for Summ. J. (00–0786); Def.'s Mot. to Dismiss or for Summ. J. (00–1104). After concluding that the plaintiff effectively had filed both complaints within the relevant deadlines, this court denied the defendant's motions to dismiss. Mem. Op. (00–0786) dated Apr. 6, 2001; Mem. Op. (00–1104) dated Mar. 27, 2001. Determining that the defendant's alternative motions for summary judgment were premature,

---

**2.** Initially, the plaintiff proceeded *pro se.* In the spring of 2001, however, the plaintiff moved for appointment of counsel and for leave to proceed *in forma pauperis.* The court granted both requests. Orders dated Apr. 12, 2001 and May 15, 2001.

**3.** The two actions were docketed as Civil Action Nos. 00–0786 and 00–1104. As noted, the court subsequently consolidated the two cases into Civil Action No. 00–0786 and dis-

missed Civil Action No. 00–1104. Orders dated June 4, 2001 and Oct. 29, 2001.

**4.** Although the plaintiff's EEO complaint arising out of the 1996 Offer alleged discrimination based on both disability and retaliation, the plaintiff's subsequent complaint and filings allege discrimination based only on disability. *Compare* Compl. (00–0786) *and* Pl.'s Renewed Opp'n *with* Pl.'s Renewed Opp'n Ex. 38.

the court denied those motions without prejudice. *Id.*

Shortly thereafter, the court consolidated the two cases into one and set a schedule for discovery and briefing. Order dated June 4, 2001. The court later extended the final deadline for discovery to May 15, 2002. Order dated Apr. 8, 2002.

In February 2002, during the discovery process, the plaintiff served the defendant with several requests for admission pursuant to Federal Rule of Civil Procedure 36. Pl.'s Opp'n to Def.'s Mot. for Leave to Withdraw ("Pl.'s Withdrawal Opp'n") at 5–6 & Ex. 13; Pl.'s Renewed Opp'n Ex. 27. Among the requested admissions were several relating to the plaintiff's alleged disability. Pl.'s Opp'n Ex. 27. The defendant did not respond within the rule's 30-day deadline. *Id.* at 23; Def.'s Mot. for Leave to Withdraw ("Def.'s Withdrawal Mot.") at 1. In May 2002, at the close of discovery, the defendant served a belated response denying several of the requested admissions, including most of those pertaining to the plaintiff's alleged disability. Pl.'s Opp'n at 23 n. 9; Def.'s Reply at 2 n. 1 & Ex. 1.

Approximately five weeks after discovery closed, the defendant filed a motion for summary judgment, alleging that the plaintiff had failed to establish a *prima facie* case of discrimination. Def.'s Mot. for Summ. J. ("Def.'s Mot.") at 1. As part of its argument, the Postal Service reiterated that the plaintiff had failed to show that she was an individual with a disability. *Id.* at 12–14. In July 2002, the plaintiff filed an opposition indicating that because the defendant had failed to timely respond to her February requests for admissions, the defendant had admitted that the plaintiff was an individual with a disability. Pl.'s Opp'n at 23–25, 36. In August 2002, the defendant filed a motion for leave to withdraw all deemed admissions and substitute the defendant's May 2002 response.

Def.'s Withdrawal Mot. at 1. On December 10, 2002, the court denied the defendant's motion, concluding that withdrawal of the defendant's admissions would not subserve the presentation of the merits. Mem. Op. dated Dec. 10, 2002. One month later, on January 10, 2003, the defendant filed a renewed motion for summary judgment. Def.'s Renewed Mot. for Summ. J. ("Def.'s Renewed Mot."). The court now turns to the defendant's renewed motion.

## III. ANALYSIS

### A. Legal Standard for a Motion for Summary Judgment

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Diamond v. Atwood,* 43 F.3d 1538, 1540 (D.C.Cir.1995). To determine which facts are "material," a court must look to the substantive law on which each claim rests. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A "genuine issue" is one whose resolution could establish an element of a claim or defense and, therefore, affect the outcome of the action. *Id.; Celotex,* 477 U.S. at 322, 106 S.Ct. 2548.

In ruling on a motion for summary judgment, the court must draw all justifiable inferences in the nonmoving party's favor and accept the nonmoving party's evidence as true. *Anderson,* 477 U.S. at 255, 106 S.Ct. 2505. A nonmoving party, however, must establish more than "the mere existence of a scintilla of evidence" in support of its position. *Id.* at 252, 106 S.Ct. 2505. To prevail on a motion for summary judg-

ment, the moving party must show that the nonmoving party "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322, 106 S.Ct. 2548. By pointing to the absence of evidence proffered by the nonmoving party, a moving party may succeed on summary judgment. *Id.*

In addition, the nonmoving party may not rely solely on allegations or conclusory statements. *Greene v. Dalton*, 164 F.3d 671, 675 (D.C.Cir.1999); *Harding v. Gray*, 9 F.3d 150, 154 (D.C.Cir.1993). Rather, the nonmoving party must present specific facts that would enable a reasonable jury to find in its favor. *Greene*, 164 F.3d at 675. If the evidence "is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249–50, 106 S.Ct. 2505 (internal citations omitted).

■ Finally, because it is difficult for a plaintiff to establish proof of discrimination, the court should adopt a heightened standard for discrimination cases, approaching summary judgment with special caution. *Aka v. Wash. Hosp. Ctr.*, 116 F.3d 876, 879–80 (D.C.Cir.1997), *overturned on other grounds*, 156 F.3d 1284 (D.C.Cir.1998) (en banc).

## B. Sex Discrimination

### 1. Legal Standard for a Sex–Discrimination Claim

Generally, to prevail on a claim of sex discrimination under Title VII, a plaintiff must follow a three-part burden-shifting analysis generally known as the *McDonnell Douglas* framework. *Lathram v. Snow*, 336 F.3d 1085, 1088 (D.C.Cir.2003). The Supreme Court explained the framework as follows:

First, the plaintiff has the burden of proving by the preponderance of the evidence a prima facie case of discrimi-

nation. Second, if the plaintiff succeeds in proving the prima facie case, the burden shifts to the defendant "to articulate some legitimate, nondiscriminatory reason for the employee's rejection" . . . Third, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination . . . . The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.

*Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252–53, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981) (internal citations omitted) (quoting *McDonnell Douglas v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)).

■ To establish a prima facie case of sex discrimination, the plaintiff must show that (1) he is a member of a protected class; (2) he was similarly situated to an employee who was not a member of the protected class; and (3) he and the similarly situated employee were treated disparately. *Holbrook v. Reno*, 196 F.3d 255, 261 (D.C.Cir.1999). "The burden of establishing a prima facie case of disparate treatment is not onerous." *Burdine*, 450 U.S. at 253, 101 S.Ct. 1089. If the plaintiff establishes a prima facie case, a presumption then arises that the employer unlawfully discriminated against the employee. *Id.* at 254, 101 S.Ct. 1089. To rebut this presumption, the employer must articulate a legitimate, non-discriminatory reason for its action. *Id.* The employer "need not persuade the court that it was actually motivated by the proffered reasons." *Id.* Rather, "[t]he defendant must clearly set forth, through the introduction of admissible evidence, reasons for its actions which,

if believed by the trier of fact, would support a finding that unlawful discrimination was not the cause of the employment action." *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 507, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993).

██ If the employer successfully presents a legitimate, non-discriminatory reason for its actions, "the *McDonnell Douglas* framework—with its presumptions and burdens—disappears, and the sole remaining issue is discrimination *vel non.*" *Lathram,* 336 F.3d at 1088 (internal citations omitted). At this point, to survive summary judgment, the plaintiff "must show that a reasonable jury could conclude from all of the evidence that the adverse employment decision was made for a discriminatory reason." *Id.* (citing *Aka v. Wash. Hosp. Ctr.,* 156 F.3d 1284, 1290 (D.C.Cir. 1998) (en banc)). The court must consider whether the jury could infer discrimination from (1) the plaintiff's prima facie case, (2) any evidence the plaintiff presents to attack the employer's proffered explanation, and (3) any further evidence of discrimination that may be available to the plaintiff. *Waterhouse v. District of Columbia,* 298 F.3d 989, 992–93 (D.C.Cir.2002) (quoting *Aka,* 156 F.3d at 1289). The plaintiff need not present evidence in each of these categories in order to avoid summary judgment. *Aka,* 156 F.3d at 1289. Rather, the court should assess the plaintiff's challenge to the employer's explanation in light of the total circumstances of the case. *Id.* at 1291.

### 2. The Court Grants the Defendant's Motion for Summary Judgment on the Sex–Discrimination Claim [5]

The defendant contends that the plaintiff has not established a prima facie case of sex discrimination with regard to the 1992 Acting Supervisor dispute because the plaintiff "cannot show that she was treated differently than similarly situated employees not of her protected class." Def.'s Renewed Mot. at 22. Specifically, the defendant asserts that the plaintiff has not produced evidence that the three male co-workers who served as Acting Supervisor had frequent absences from work or had physical limitations on their work duties. *Id.* at 4, 23. The defendant also notes that the three male co-workers served as Acting Supervisor in 1991 and 1992, prior to the March 1992 date on which the plaintiff alleges that the defendant's discrimination began. *Id.* at 4–5 (citing Def.'s Renewed Mot. Exs. 1–3). Finally, the defendant states that its area manager previously had selected female co-workers to serve as Acting Supervisor. *Id.* (citing Def.'s Renewed Mot. Ex. 9). In response, the plaintiff argues that the Postal Service declined to select her for Acting Supervisor based solely on her physical limitations, and that because she believes those limitations are in dispute, she was similarly situated to her male co-workers. Pl.'s Renewed Opp'n at 32.

██ The court agrees with the defendant that the plaintiff has failed to establish a prima facie case of sex discrimination. As the defendant notes, the Postal Service promoted the three male co-workers to the Acting Supervisor position in 1991, prior to the March 1992 date on which the plaintiff alleges that the sex discrimination began. Def.'s Renewed Mot. at 4–5 & Ex. 2; Def.'s Statement of Undisputed Mat. Facts ("Def.'s Statement") ¶ 15; Pl.'s Statement of Disputed Mat. Facts ("Pl.'s Statement") ¶ 15. Even if the three male co-workers had received their promotions after March 1992, the

---

5. The plaintiff does not allege sex discrimination in connection with the 1996 Offer. *See*

*generally* Compl. (00–0786).

plaintiff presents no evidence that these co-workers—or any other male co-workers who received post-March 1992 promotions—were similarly situated in terms of, for example, seniority and evaluations. *Neuren v. Adduci, Mastriani, Meeks & Schill,* 43 F.3d 1507, 1514 (D.C.Cir.1995). To prove that she and her male co-workers were "similarly situated," the plaintiff must demonstrate that "all of the relevant aspects of her employment situation were nearly identical" to those of the male co-workers. *Marks v. Westphal,* 2002 WL 335510, at *1 (D.C.Cir. Jan.25, 2002) (per curiam) (citing *Neuren,* 43 F.3d at 1514). The plaintiff offers no evidence whatsoever on this point. *See generally* Pl.'s Renewed Opp'n & Exs. Instead, she appears to assume that by raising what she believes are genuine issues about the extent of her physical limitations, she has shown that she was similarly situated to her male co-workers and thus has satisfied the elements of a prima facie case for sex discrimination. Pl.'s Renewed Opp'n at 32. But that showing is not sufficient to satisfy the plaintiff's burden. *Stella v. Mineta,* 284 F.3d 135, 144 (D.C.Cir.2002) (stressing that it is the plaintiff's burden to establish a prima facie case of discrimination); *Marks,* 2002 WL 335510, at *1 (summarily affirming lower court's judgment in favor of defendant because the plaintiff did not present sufficient evidence that a similarly situated individual existed and was treated differently from the plaintiff).. *Id.*

In sum, because the three male co-workers cited by the plaintiff were promoted prior to March 1992, and because the plaintiff fails to demonstrate that she was similarly situated to male co-workers selected to serve as Acting Supervisor after March 1992, the plaintiff has failed to establish a prima facie case of sex discrimination. *Holbrook,* 196 F.3d at 261. Accordingly, the court grants the defendant's motion for summary judgment on the sex-discrimination claim. *Celotex,* 477 U.S. at 322, 106 S.Ct. 2548; *Greene,* 164 F.3d at 675.

## C. Retaliation Discrimination

### 1. Legal Standard for a Retaliation Claim

■ A claim of retaliation also falls under the three-part burden-shifting *McDonnell Douglas* framework. *Morgan v. Fed. Home Loan Mortgage Corp.,* 328 F.3d 647, 651 (D.C.Cir.2003) (applying the *McDonnell Douglas* framework to a Title VII retaliation claim); *Duncan v. Wash. Metro. Area Transit Auth.,* 214 F.R.D. 43, 49–50 & n. 8 (D.D.C.2003) (applying the *McDonnell Douglas* framework to a Rehabilitation Act retaliation claim). To establish a prima facie case of retaliation, a plaintiff must show that (1) he engaged in a statutorily protected activity, (2) the employer took an adverse personnel action, and (3) there existed a causal connection between the two. *Id.* Here, too, the plaintiff's burden is not great: the plaintiff "merely needs to establish facts adequate to permit an inference of retaliatory motive." *Forman v. Small,* 271 F.3d 285, 299 (D.C.Cir.2001).

■■ With regard to the first prong of the plaintiff's prima facie case of retaliation, statutorily protected activities include the filing of EEO complaints. *Forkkio v. Powell,* 306 F.3d 1127, 1131–32 (D.C.Cir. 2002). As for the second prong, "to establish an adverse personnel action in the absence of diminution of pay or benefits, plaintiff must show an action with materially adverse consequences affecting the terms, conditions, or privileges of employment." *Stewart v. Evans,* 275 F.3d 1126, 1134 (D.C.Cir.2002) (quoting *Brown v. Brody,* 199 F.3d 446, 457 (D.C.Cir.1999)). Minor changes in work-related duties or opportunities do not qualify as actionable injuries unless accompanied by adverse changes in the terms, conditions, or privi-

leges of employment. *Id.* at 1135. Likewise, "[m]ere inconveniences and alteration of job responsibilities will not rise to the level of adverse action." *Id.* (internal citations omitted). Finally, under the third prong, the plaintiff may establish a causal connection "by showing that the employer had knowledge of the employee's protected activity, and that the adverse personnel action took place shortly after that activity." *Cones v. Shalala,* 199 F.3d 512, 521 (D.C.Cir.2000) (quoting *Mitchell v. Baldrige,* 759 F.2d 80, 86 (D.C.Cir.1985)). To qualify as a causal connection, however, the temporal proximity between the employer's knowledge of the protected activity and the adverse personnel action must be "very close." *Clark County Sch. Dist. v. Breeden,* 532 U.S. 268, 273, 121 S.Ct. 1508, 149 L.Ed.2d 509 (2001) (noting that a three– or four-month period between an adverse action and protected activity is insufficient to show a causal connection, and that a 20–month period suggests "no causality at all").

## 2. The Court Grants the Defendant's Motion for Summary Judgment on the Retaliation Claim Arising Out of the 1992 Acting Supervisor Dispute [6]

The plaintiff asserts that she has established a prima facie case of retaliation with regard to the 1992 Acting Supervisor dispute. Pl.'s Renewed Opp'n at 31. She argues that she engaged in statutorily protected activity when she filed her EEO complaints and suffered an adverse employment action when the defendant denied her promotion to Acting Supervisor. *Id.* Moreover, she asserts that she has established a causal connection between the protected activity and the adverse employment action by pointing out that she

filed her EEO complaints just before the alleged discrimination began in March 1992, and that the area manager responsible for Acting Supervisor promotions knew of these complaints. *Id.*

■ The court concludes that the plaintiff has failed to establish a *prima facie* case for retaliation. The plaintiff certainly engaged in statutorily protected activity when she filed her EEO complaints, and the defendant's decision not to promote the plaintiff does qualify as an adverse employment action. *Forkkio,* 306 F.3d at 1131–32; *Stewart,* 275 F.3d at 1134. But the plaintiff has not established a causal connection between her filing of EEO complaints and the defendant's failure to promote her. *Cones,* 199 F.3d at 521. Although the plaintiff's area manager was aware of the plaintiff's January 1992 EEO complaint when she decided not to promote the plaintiff to Acting Supervisor in March 1992, the two-month gap is not sufficient to establish the temporal proximity necessary to show a causal connection. *E.g., Kipp v. Mo. Highway & Transp. Comm'n,* 280 F.3d 893, 897 (8th Cir.2002) (concluding that an interval of two months between protected activity and an adverse action "so dilute[d] any inference of causation that we are constrained to hold as a matter of law that the temporal connection could not justify a finding in [the plaintiff's] favor on the matter of causal link"); Pl.'s Renewed Opp'n at 31 & Exs. 11, 19; Def.'s Renewed Mot. at 21.

Because the plaintiff has failed to establish a prima facie case of retaliation, the court grants the defendant's motion for summary judgment on the retaliation claim arising out of the 1992 Acting Supervisor dispute. *Celotex,* 477 U.S. at 322,

---

**6.** The plaintiff does not allege retaliation discrimination in connection with the 1996 Of-

fer. *See* note 4, *supra.*

106 S.Ct. 2548; *Forman*, 271 F.3d at 299; *Greene*, 164 F.3d at 675.

### D. Disability Discrimination

### 1. Legal Standard for a Disability–Discrimination Claim Under the Rehabilitation Act

■ Discrimination claims based on disability are distinct from other types of discrimination claims because an employer legitimately may consider disability when determining whether an employee is qualified for a particular position. *Barth v. Gelb*, 2 F.3d 1180, 1186 (D.C.Cir.1993) (noting that "while an agency would never admit to basing an employment decision on race, agencies frequently acknowledge that they have taken a person's handicap into consideration"). Accordingly, whether the employer considered disability in taking its action affects the court's analysis. *Id.* In cases where the employer denies that its actions were motivated by the plaintiff's disability, the court applies the *McDonnell Douglas* burden-shifting framework to a disability-discrimination claim under the Rehabilitation Act. *McGill v. Munoz*, 203 F.3d 843, 845 & n. 2 (D.C.Cir.2000). Alternately, in cases where the employer acknowledges that its actions were motivated by the plaintiff's disability, the court does not apply the *McDonnell Douglas* framework but instead applies traditional burdens of proof. *Barth*, 2 F.3d at 1186; *see also Monette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1182 (6th Cir.1996) (noting that "[t]he *McDonnell Douglas* burden-shifting approach is unnecessary because the issue of the employer's intent, the issue for which *McDonnell Douglas* was designed, has been admitted by the defendant"). In such cases, however, the plaintiff still must prove her case of disability discrimination by a preponderance of the evidence. *Barth*, 2 F.3d at 1186.

■ To establish a prima facie case of discrimination under the Rehabilitation Act, the plaintiff must show that she (1) is an individual with a disability (2) who, with or without reasonable accommodation, can perform the essential functions of the position, and (3) who suffered an adverse employment decision due to her disability. *Breen v. Dep't of Transp.*, 282 F.3d 839, 841 (D.C.Cir.2002); *LaCorte v. O'Neill*, 139 F.Supp.2d 45, 47–48 (D.D.C.2001) (citing *Barth*, 2 F.3d at 1186).

### 2. The Court Denies the Defendant's Motion for Summary Judgment on the Disability–Discrimination Claim Arising Out of the 1992 Acting Supervisor Dispute

The plaintiff alleges that the defendant discriminated against her on the basis of disability when it refused to promote her to Acting Supervisor from 1992 onward. Pl.'s Renewed Opp'n at 19–30. At the outset, the court notes that the defendant's stated reason for refusing to promote the plaintiff to Acting Supervisor is based on her disability. Def.'s Statement ¶ 6 (stating that the defendant "would have selected plaintiff to serve as an acting supervisor had it not violated her medical restrictions"); Def.'s Renewed Mot. at 24 (explaining that "plaintiff clearly could not perform the essential functions of the position without violating her medical restrictions"); Pl.'s Renewed Opp'n Ex. 27 (setting forth the defendant's admission that the plaintiff "was not considered for selection as a 204B Acting Supervisor at Customs House Station solely on the basis of 'medical restrictions relative to lifting and prolonged standing'"). Accordingly, as noted, the *McDonnell Douglas* burden-shifting framework is not appropriate for the plaintiff's disability-discrimination claim arising out of the 1992 Acting Supervisor dispute. *Barth*, 2 F.3d at 1186.

The plaintiff, however, still bears the burden of establishing a prima facie case

of disability discrimination. *Id.* With regard to the first prong of the prima facie case, the defendant has admitted that the plaintiff "was an 'individual with a disability' at all times relevant to [her Acting Supervisor claim]." Pl.'s Renewed Opp'n Ex. 27 ¶ 6; *see also* Mem. Op. dated Dec. 10, 2002 (denying the defendant's motion for leave to withdraw admissions). Therefore, the plaintiff has satisfied the first element of her prima facie case. *Breen,* 282 F.3d at 841.

The second prong of the prima facie case—whether the plaintiff can perform the essential functions of the Acting Supervisor position, with or without reasonable accommodation—presents a greater challenge. *Id.* The "essential functions" of a job consist of "the fundamental duties of the employment position the individual with a disability holds," and "do[ ] not include the marginal functions of the position." [7] 29 C.F.R. § 1630.2(n)(1); *Weigert v. Georgetown Univ.,* 120 F.Supp.2d 1, 14 (D.D.C.2000). In determining the essential functions, the court must consider and give deference to "the employer's judgment as to what functions of a job are essential." 42 U.S.C. § 12111(8); *Swanks v. Wash. Metro. Area Transit Auth.,* 179 F.3d 929, 934 (D.C.Cir.1999). "[I]f an employer has prepared a written description before advertising or interviewing applicants for the job, this description shall be considered evidence of the essential functions of the job." *Id.* The court also may consider other evidence of a job's essential functions, including "[t]he amount of time spent on the job performing the function; ... [t]he consequences of not requiring the incumbent to perform the function; ... [t]he terms of a collective bargaining agreement; ... [t]he work experience of past incumbents in the job; and/or ...

[t]he current work experience of incumbents in similar jobs." 29 C.F.R. § 1630.2(n)(3).

Here, the two parties present different accounts of the essential functions of the Acting Supervisor position. Relying on the testimony of the plaintiff's area manager, the defendant argues that the area manager believed that significant lifting, standing, and walking were essential functions of the Acting Supervisor position. Def.'s Renewed Mot. at 13–14 & Ex. 6; Def.'s Renewed Reply at 3. The defendant contends that because the plaintiff's physician expressly restricted the plaintiff from such activities, the defendant denied the plaintiff the promotion. *Id.*

In contrast, the plaintiff points to the standard position description provided by the defendant for prospective applicants. Pl.'s Renewed Opp'n at 8–9, 23. According to the plaintiff, the description enumerates 13 duties and responsibilities, "none [of which] are primarily physical activities or involve physical labor." *Id.* at 8 & Ex. 24. The plaintiff also contends that none of the description's nine requirements for the position require physical labor. *Id.* at 9 & Ex. 24. In addition, the plaintiff cites the testimony of co-workers whose descriptions of Acting Supervisor duties she believes support her account of the job's essential functions. *Id.* at 9–12 & Exs. 3, 4, 6. Lastly, the plaintiff stresses that one co-worker testified that on at least one occasion when the plaintiff filled in as Acting Supervisor, "she appeared to perform the duties and responsibilities as well as the regular supervisor." *Id.* at 12 & Ex. 6.

Both parties have presented legitimate arguments setting forth their views of the essential functions of the Acting Supervisor position. The testimony of the plain-

---

**7.** The Rehabilitation Act directs courts to apply the standards of the Americans with Disabilities Act ("ADA") in evaluating a Re-

habilitation Act claim of employment discrimination. 29 U.S.C. § 794(d); *Breen,* 282 F.3d at 841.

tiff's area manager provides the defendant with a strong argument in support of its view that the plaintiff was unable to perform the required duties of the position.[8] Def.'s Renewed Mot. Ex. 6. The court's deference to the employer's judgment regarding a job's essential functions, however, does not end the inquiry: as noted, the court also may weigh evidence of other factors presented by the plaintiff. 29 C.F.R. § 1630.2(n)(3); *e.g., Foran v. Henderson,* 1999 WL 33117088, at *3 (D.Me. July 14, 1999) (stating that "[a]n employer's view of the essential functions of a job is but one of several factors to be weighed in assessing whether certain functions are in fact essential"). Here, the plaintiff presents evidence in the form of the defendant's standard position description and indications by her co-workers that the functions of the job were not physically demanding. *Foran,* 1999 WL 33117088, at *3 (declining to defer to the Postal Service's judgment in light of the plaintiff's "significant evidence" of testimony of long-time mail handlers regarding the functions of a casual mail handler) (citing *Hall v. United States Postal Serv.,* 857 F.2d 1073, 1079 (6th Cir.1988)); Pl.'s Renewed Opp'n Ex. 24.

Given the legitimate dispute over the position's essential functions, the court concludes that summary judgment is inap-

propriate. *Celotex,* 477 U.S. at 322, 106 S.Ct. 2548; *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505. First, the definition of the position's essential functions is a material fact that could affect the outcome of the case: if the plaintiff were able to convince the trier of fact of her version of the essential functions of the job and that she was capable of performing those functions, she could establish a prima facie case of disability discrimination.[9] *Id.* Second, courts generally view a dispute over the definition of a job's essential functions as a question of fact that should be resolved by a jury. *E.g., Tuck v. HCA Health Servs. of Tenn., Inc.,* 7 F.3d 465, 471 (6th Cir. 1993) (indicating that "[i]ssues involving the essential elements of the job ... are primarily factual issues"); *Wenner v. City of N.Y. Dep't of Sanitation,* 1996 WL 30289, at *3 (S.D.N.Y. Jan.24, 1996) (noting that "[t]he determination of essential job functions is a fact-specific inquiry"); *see also Barber v. Nabors Drilling U.S.A., Inc.,* 130 F.3d 702, 707 (5th Cir.1997) (stating that by second-guessing the definition of essential functions, courts "usurp the most critical role of the jury[:] i.e., the injection of some indispensable common sense in the determination of what is or is not an essential function"). Accordingly, because the definition of the essential functions of the Acting Supervisor position is a

8. In an effort to bolster the area manager's testimony, the defendant quotes *Evans v. Davis Memorial Goodwill Industries* for the notion that "the issue is not the 'correctness or desirability of [the] reasons offered [but] whether the employer honestly believes in the reasons it offers.'" Def.'s Renewed Mot. at 14 (citing *Evans,* 133 F.Supp.2d 24, 29 (D.D.C.2000)); Def.'s Renewed Reply at 3–4 (same). The *Evans* court, however, was referring to the employer's state of mind regarding its legitimate, nondiscriminatory reason for taking the adverse action (part of the *McDonnell Douglas* burden-shifting framework), not to the defendant's opinion as to the essential functions of the job. *Id.*

9. The plaintiff has shown that she suffered an adverse employment decision due to her disability, thereby establishing the third prong of her prima facie case of disability discrimination. *Breen,* 282 F.3d at 841. The refusal to promote an employee is an adverse employment action in the context of an employment discrimination claim. *Brown,* 199 F.3d at 456; *Sanders v. Veneman,* 211 F.Supp.2d 10, 21 (D.D.C.2002). Moreover, the defendant has stated that it did not promote the plaintiff because of her disability. Def.'s Renewed Mot. at 24.

genuine and disputed issue of material fact, the court denies summary judgment on the disability-discrimination claim arising out of the 1992 Acting Supervisor dispute. *Celotex*, 477 U.S. at 322, 106 S.Ct. 2548; *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505; *accord LaCorte*, 139 F.Supp.2d at 49 (denying summary judgment based in part on the dispute between the parties regarding a position's essential functions); *Morris v. Roche*, 182 F.Supp.2d 1260, 1279 (M.D.Ga.2002) (same); *Foran*, 1999 WL 33117088, at *4 (same).

### 3. The Court Grants the Defendant's Motion for Summary Judgment on the Disability–Discrimination Claim Arising Out of the 1996 Offer

The plaintiff also alleges that the defendant discriminated against her on the basis of disability with regard to the 1996 Offer. Pl.'s Renewed Opp'n at 36–43. Because the defendant does not indicate that it acted on the basis of the plaintiff's disability, the *McDonnell Douglas* burden-shifting framework applies to this claim. *McGill*, 203 F.3d at 845 & n. 2.

To satisfy the first prong of the prima facie case for disability discrimination, the plaintiff must show that she is an individual with a disability.[10] *Breen*, 282 F.3d at 841. Under the ADA,[11] a disability consists of "a physical or mental impairment that substantially limits one or more of the major life activities of [an] individual." 42 U.S.C. § 12102(2)(A); *Duncan v. Wash.*

*Metro. Area Transit Auth.*, 240 F.3d 1110, 1114 (D.C.Cir.2001). As the Supreme Court recently noted, "[m]erely having an impairment does not make one disabled for purposes of the ADA[; c]laimants also need to demonstrate that the impairment limits a major life activity." *Toyota Motor Mfg., Ky., Inc. v. Williams*, 534 U.S. 184, 195, 122 S.Ct. 681, 151 L.Ed.2d 615 (2002). Moreover, "a claimant must further show that the limitation on the major life activity is 'substantial.'" *Id.* (citing 42 U.S.C. § 12102(2)(A)). A plaintiff who claims that his ability to work is the major life activity affected by his disability "must allege and prove that in his particular circumstances, taking into account the appropriate factors, his impairment prevents him from performing a 'substantial class' or 'broad range' of jobs otherwise available to him." *Duncan*, 240 F.3d at 1115.

▉ In this case, to demonstrate that she was an individual with a disability when the defendant altered the 1996 Offer, the plaintiff must show that she had a physical impairment that substantially limited at least one of her major life activities. *Id.* The record in this case shows that in November 1995, the plaintiff suffered a broken right wrist and injured her right shoulder after slipping and falling while delivering the mail. Def.'s Renewed Mot. at 5 & Exs. 5, 10–13. As a result of her injuries, the plaintiff was absent from work until July 1996. *Id.* at 5 & Ex. 10. In August 1996, the plaintiff's physician au-

---

**10.** In contrast to its actions regarding the 1992 Acting Supervisor claim, the defendant has not admitted that the plaintiff is an individual with a disability for purposes of the 1996 Offer claim. *See generally* Pl.'s Renewed Opp'n Ex. 27. The plaintiff therefore must prove that she is such an individual to satisfy the first prong of her prima facie case. *Burdine*, 450 U.S. at 253, 101 S.Ct. 1089; *Breen*, 282 F.3d at 841. Rather than present evidence, however, the plaintiff appears to rely on the fact that the defendant challenges

only the plaintiff's ability to satisfy the third prong—adverse employment decision—of a prima facie case. Pl.'s Renewed Opp'n at 36–37. But the defendant's failure to attack the plaintiff's ability to satisfy the first and second prongs does not relieve the plaintiff of her burden to establish her prima facie case. *Burdine*, 450 U.S. at 253, 101 S.Ct. 1089.

**11.** As noted, the Rehabilitation Act directs courts to apply ADA standards to Rehabilitation Act claims. *See* note 7, *supra*.

thorized the plaintiff to resume light duties. *Id.* Ex. 11. By September 1996, when the plaintiff signed the 1996 Offer, she had been cleared to lift up to 20 pounds. *Id.* Ex. 13. Although her injury may well have been serious, the plaintiff provides no evidence that the injury had substantially limited one of her major life activities in the fall of 1996, when the Modified Carrier title on the 1996 Offer was "whited-out" and replaced with the PTF Clerk title. *See generally* Pl.'s Renewed Opp'n.

Because the plaintiff has not shown that one of her major life activities was substantially limited at the time the defendant altered the 1996 Offer, she has not established the first prong of her prima facie case of disability discrimination. *Breen,* 282 F.3d at 841; *see also Walker v. Ashcroft,* 2002 WL 335530, at *1 (D.C.Cir. Jan.25, 2002) (per curiam) (finding that the employee had not sufficiently alleged that his impairment substantially limited one or more major life activity); *Duncan,* 240 F.3d at 1115 (same). Accordingly, the court grants the defendant's motion for summary judgment on the disability-discrimination claim arising out of the 1996 Offer. *Celotex,* 477 U.S. at 322, 106 S.Ct. 2548; *Greene,* 164 F.3d at 675.

## IV. CONCLUSION

For the foregoing reasons, the court grants in part and denies in part the defendant's renewed motion for summary judgment. An advance order consistent with this Memorandum Opinion was separately issued the 29th day of September 2003.